249 So.2d 388 (1971)
STATE of Mississippi, etc.
v.
Robert N. STOCKETT et al.
No. 45997.
Supreme Court of Mississippi.
May 17, 1971.
Rehearing Denied June 28, 1971.
A.F. Summer, Atty. Gen., by Delos H. Burks, Deputy Atty. Gen., and Erwin C. Ward, Sp. Counsel, Jackson, for appellant.
Taylor & Taylor, Bacon & Smith, Jackson, for appellees.
*389 SMITH, Justice:
The State of Mississippi has appealed from an adverse decree of the Chancery Court of the First Judicial District of Hinds County entered in a suit brought by it to quiet its alleged title to certain real estate. The chancellor dismissed the bill and, on cross-bill, confirmed title to such real estate in appellees, Robert N. Stockett and Carolyn Price Stockett.
The City of Jackson, a defendant in the suit, filed a disclaimer of any interest in the land and was dismissed from the case. Also, on motion of the State, Rankin-Hinds Pearl River Flood and Drainage Control District, established by the Mississippi Legislature under Mississippi Code 1942 Annotated section 3665.02 et seq. (Supp. 1970), the District having been the Stocketts' immediate predecessor in title to the lands here involved, was also dismissed.
Assigned as error on appeal is the action of the chancellor in upholding two patents issued by the State, (1) to W.W. Moore in 1915 and (2) to J.H. Howie in 1936. *390 Also assigned as error is the action of the chancellor in applying the doctrine of equitable estoppel against the State under the facts in the case, and in holding that Mississippi Code 1942 Annotated section 4106.5 (1956) created presumptive validity of the 1936 patent.
The lands in question comprise approximately 30 acres of swamp lands located in Pearl River Bottom and subject to overflow. These lands were a part of lands granted to the State of Mississippi by the United States as "seat of government lands" by an Act of Congress in 1819, although a patent from the United States to the State of Mississippi was not actually issued until September, 1915. The grant of these "seat of government lands," as located by Commissioners appointed by the State, encompassed some four half-sections or approximately 1,280 acres. Long prior to 1900, this land was surveyed and mapped into lots and blocks.
In November, 1915, W.W. Moore filed an application with the State Land Commissioner to purchase 28 1/2 acres of this land, offering to pay for it at the rate of $2.00 an acre. Pursuant to the application, a patent was issued to him by the Land Commissioner, countersigned by the Governor and attested to by the Secretary of State. Moore duly paid the State for the land at the rate of $2.00 per acre. The patent recited that it had been issued pursuant to the provisions of Section 2919, Chapter 77, of the Mississippi Code of 1906 and that Moore had complied with all of the requirements of law "in such cases."
Chapter 77 of the Mississippi Code of 1906 deals with state owned lands. It contains separate provisions for the several types of lands owned by the State, such as, among others, tax lands, Choctaw School lands, swamp and overflowed lands, and internal improvement lands. Section 2919 of the Chapter is entitled "Other Lands; sale of and price fixed." It then provides: "All lands fallen or falling to the state by escheat, or coming to it in any other manner; * * * and all other lands within the borders of the state, and not belonging to the United States nor owned by another, are the property of the State, and to be managed and disposed of through the land-office; and the land-commissioner may sell any of such lands at the same price as the swamp and overflow lands, subject to be fixed in the same manner and under like regulations. * * *"
Following the issuance of the State's patent to Moore, title passed from him through mesne conveyances and became vested in a Mrs. N.B. Easterling.
Throughout this period, these lands were assessed, taxed and dealt with as lands which were the subject of private ownership.
The position of the State, as gathered from its bill of complaint, and the argument of counsel on appeal, is that it has never at any time parted with title to the lands in question, notwithstanding the patent issued to Moore (and later, in 1936,) the patent issued to J.H. Howie.
The State's position with respect to the Moore patent is that it is void under a rule laid down in Huber v. Freret, 138 Miss. 238, 103 So. 3 (1925).
Huber involved a 1923 patent issued by the State which purported to convey certain improved business property in the City of Jackson. The consideration for the patent was $1.00. The lot in question fronted 40 feet "on the best part of the best business street (Capitol Street) of a [thriving] city of thirty thousand population" and there was located upon it a store building. Suit was begun by Freret to oust Huber and to establish his own title to the property upon the basis of the 1923 patent. In Huber, the patent was attacked on two grounds: (1) the consideration of $1.00 was only nominal and amounted to no consideration, so that the patent was an unconstitutional donation of State property, and (2) the sale of "urban business property surveyed and divided into blocks and *391 lots" was not authorized by statute. In deciding the case the Court arrived at the conclusion that, although nowhere stated in the statute, the power of sale granted by the Legislature extended only to rural lands, such as were "ordinarily sold by the acre at a price of so much per acre." The patent in Huber had been issued under the provisions of Section 2919 Mississippi Code of 1906, as was the Moore patent. In deciding that the Land Commissioner was without power to convey the business property involved in Huber, the Court said: "It must be admitted that the language used in the statute defining what constitutes public lands belonging to the state is broad enough to cover urban business property." And further, "it is true in order to so hold (that the Land Commissioner was without power to convey "urban business property") we must go beyond the strict letter of the statute." It is certain that there is no language in section 2919 or in section 2912 (which latter section the Court said should be construed in connection with it) capable of supporting the Court's conclusion that urban business property which had been divided into lots and blocks had been excluded by the Legislature from the power of sale granted the Land Commissioner. A careful reading of Huber shows that it turned upon the question of the type or character of the property as it affected its valuation. The Court apparently felt justified in holding that urban business property was more valuable than ordinary property and concluded that sale for $1.00 of a Jackson business establishment fronting 40 feet on Capitol Street would not be sanctioned. Therefore, it will be observed that the genesis of the rule relied upon here by the State, that a valid patent might not be issued which undertook to convey "urban business property surveyed and divided into lots and blocks not ordinarily sold by the acre at a price of so much per acre" is to be found in Huber rather than in any language appearing in sections 2912 or 2919.
This judicial interpolation into the statute of an exception not mentioned by the Legislature was made the basis for the Court's decision that the 1923 patent to valuable business property in the City of Jackson for $1.00 was invalid. It will be noted also that the State was not a party in Huber. While the Court stated that the patent "involved in this case" was issued without authority of law, the case was reversed and remanded.
Huber was followed by State v. Lockyer, 140 Miss. 808, 106 So. 748 (1926) which involved a patent dated September 22, 1924. The patent under consideration in Lockyer was a tax patent and was executed under Section 2916 Mississippi Code of 1906. It did not involve seat of government or swamp and overflowed lands. In Lockyer the patent was upheld. The Court noted what had been said in Huber but concluded that the Court in Huber, had limited its decision to the facts in that case, and to holding that the Land Commissioner had been without authority to sell for $1.00 improved urban property which had been surveyed into lots and blocks for business purposes and was "located in a thriving municipality on one of its main business thoroughfares." In Lockyer, the Court refused to extend the rule to embrace lands other than urban business property and upheld the patent of lands outside a municipality, although surveyed into lots and blocks. The Court pointed out that in Huber the Court had stated that it was the purpose of the Legislature to authorize the sale of lands of the character usually sold by the acre, valuable for timber, pasturage or for agriculture. The Court also referred to the fact that in Huber the holding was "expressly limited to the right to sell `urban business lots'".
The final case cited in this series by the State is Jenkins v. Bernard, 148 Miss. 293, 114 So. 488 (1927). Jenkins, although decided in 1927, involved a tax patent executed February 10, 1920, issued by the Land Commissioner under Section 2916 Mississippi Code of 1906. Again the Court had recourse to the decision in Huber. In Jenkins the property patented was a lot containing *392 1/10 of an acre, situated within the corporate limits of the resort City of Gulfport, in a section of the city which had been divided into lots, blocks and streets.
In Jenkins the chancellor, whose decree was affirmed, before concluding as a matter of law that Huber applied, made a factual finding as to the type and character of the property there involved saying: "There are a few small stores and a few churches, etc., in the locality * * * the lot is of such small size, * * * one-tenth of an acre * * * and of such location that it is not suitable within itself for agricultural purposes or for its timber, or for pasturage. * * * The piece of ground is suitable only for residential or business purposes." The chancellor said: "* * * [T]he almost unanimous opinion of the bar, certainly at this end of the state, is that the Huber case was erroneously decided on the particular point on which the decision was made although it is conceded with equal unanimity that the Huber case was right in its result, a correct result when put upon the proper basis that the pretended sale in that case was no more than a donation." Thus it will be seen that this Court, in both Huber and Jenkins specifically recognized that the sale of lands of the type or character "commonly known" as rural lands, "usually" or "ordinarily" sold by the acre, not suitable or valuable for urban business purposes but valuable for "agriculture, timber or pasturage" purposes, had been authorized by the Legislature. In Huber, the decisive point was that it involved urban business property, and in Jenkins this Court affirmed the chancellor who found as a fact that the property had value for urban business purposes as well as for urban residential purposes. We think the controlling facts which were the basis of both the Huber and Jenkins decisions distinguish those cases from the present case.
Webster's New International Dictionary Of The English Language (2d ed. 1951), under "rural" cites 13 S.C. (Cape Colony) 62 as follows: "The test whether a tenement is rural or urban is not the place where the property is situated, but the use to which it is devoted." Whatever the source of this statement may lack as controlling authority is compensated for by the intrinsic soundness of the view expressed, if substance, rather than shadow, is to be regarded.
The character of the property in Jenkins was compared to that in Huber, the Court saying that the latter was situated within the corporate limits of the City of Jackson and "fit alone for business purposes."
The Court reiterated a statement from Huber, that in its opinion, although not stated in any statute, it was the purpose of the Legislature to deal alone with those public lands which are "usually" bought and sold by acreage, land "commonly known" as rural lands, "valuable for their timber or pasturage or for agriculture." It distinguished Lockyer and said that although the property in Lockyer had been surveyed into lots and blocks, it was valuable for other than business purposes.
The Court then said that in neither Huber nor Lockyer had the question been presented as to whether the Land Commissioner had authority to patent any "urban property, which had been divided into lots, blocks and streets" and therefore that question had not been decided. The Court said: "But we decide the question now, and hold that urban property surveyed and mapped into the usual subdivisions is conclusively presumed to have a value above that of rural property."
Unlike Huber in which no proof had been offered, and Lockyer in which the authority of the Land Commissioner to issue the patent had been upheld, Jenkins was heard on bill, answer and proof and had resulted in a decree in the trial court for Bernard and against the patentee, Jenkins. In Jenkins that decree was affirmed on appeal. As in Huber and Lockyer the emphasis in Jenkins was upon value, and the Court's holding was pinpointed to the proposition that it would be presumed that urban *393 lots which had been subdivided into "lots, blocks and streets" were more valuable than rural property.
In considering the 1915 Moore patent, the situation must be viewed as it then existed and not in the light of after developed events, then as unforeseen and unforeseeable as the landing of a man on the moon. No one, in 1915 could have predicted the development of earth moving machines capable of constructing the 1965 levee or U.S. Interstate Highway 55, both marvels of modern engineering. In 1915 such roads as there were, and there were precious few, were built with mules and slips and the same method was the only one available for the construction of levees.
In Huber, the Court judicially interpolated an exception into section 2919 and section 2912 of the 1906 Code which had not been stated in words in either of these sections or anywhere else in Chapter 77 of the Mississippi Code of 1930, the chapter in which the sections appear.
Such an interpolation, which in effect, engrafted a substantial amendment upon the statute wholly beyond its expressed terms, will be neither extended nor expanded further by this Court if that can be reasonably avoided. In neither Huber nor Jenkins was it held that lands belonging to the State which were encompassed within the boundaries of a municipality, laid off in lots or blocks, could not, under any conceivable circumstances or for any consideration, be sold by the State. Unquestionably in 1915 the lands here involved were swamp and overflowed lands, congenial only to bullfrogs and mosquitoes, subject to annual flooding, unimproved, producing no income, having no value or suitability for any residential or business purpose and, if possessing any value whatever, it was necessarily for "timber, agriculture or pasturage." It was of the character and type, notwithstanding that it had been surveyed into lots and blocks, usually and ordinarily sold by the acre or upon an acreage basis. Moore applied for his patent upon an acreage basis, offered to pay for it upon an acreage basis, the patent was issued to him upon an acreage basis and Moore actually paid for the land upon an acreage basis 60 per cent more than the minimum statutory figure. It is a matter of common knowledge that municipal boundaries often extend to include large areas of land of the kind usually sold by the acre and valuable principally for agriculture, timber or pasturage. It is inconceivable that the language used in Huber and Jenkins could be construed as holding that there was no power for the disposition of property owned by the State simply because it lay within the boundaries of a municipality, no matter what the conditions were, nor what character of land was involved, nor what consideration was paid. If we presume, as stated in Jenkins, that the land here involved, although admittedly swamp and overflowed land, was more valuable or had a value greater than it would have had if it had not been mapped into lots and blocks and had been lying without rather than within the municipal boundary line, nevertheless section 2912 authorized its sale for a price greater than the minimum, such price to be fixed by the Land Commissioner and Governor. Here this was done. The land was sold to Moore for $2.00 per acre or 60 per cent above the minimum statutory figure of $1.25. The patent was executed by the Land Commissioner and Governor and it must be presumed, particularly in the absence of anything to the contrary, that these officials duly performed their duty.
In Edward Hines Yellow Pine Trustees v. State, 133 Miss. 334, 97 So. 552 (1923), the Court said:
[1] In considering the questions involved it will be well to have in mind certain well-established principles with reference to the construction of land patents by the federal and state governments. A patent to land constituting part of the public domain by the sovereign is the very highest evidence of title. The federal government is the source *394 from which all titles are derived (except the lands in the original thirteen states), and when through its properly constituted officers it grants a part of its public domain there can be no higher source of ownership. Carter v. Spencer, 4 How. 42, 34 Am.Dec. 106; Sweatt v. Corcoran, 37 Miss. 513; Bledsoe v. Little, 4 How. 13; 22 R.C.L.P. 270, 271, § 33.
[2] Such a patent carries with it the presumption that all the legal prerequisites necessary to its issuance have been complied with; the presumption that the officers charged with executing land grants have performed their duties in regard to the several acts to be done by them. Harris v. McKissack, 34 Miss. 464; Surget v. Little, 24 Miss. 118; Sweatt v. Corcoran, supra; Bledsoe v. Little, supra; Carter v. Spencer, supra.
[3] A patent to land issued by the sovereign cannot be questioned either in a court of law or equity except on the ground of fraud or mistake. Carter v. Spencer, supra; Sweatt v. Corcoran, supra. (Id. at 370, 97 So. at 554).
Examination of the opinions in Huber and Jenkins immediately reveals that the point upon which the judgment of the Court turned in each case was the nature of the property, the land under consideration having been of the kind and character not "usually" or "ordinarily" sold by the acre and being "more" valuable because it was urban business property. Neither case dealt with land such as that here involved which had no business or residential value and was valuable only for agriculture, timber or pasturage. Moreover, it was of that type of land usually and ordinarily sold by the acre and it was sold by the acre. Huber, Lockyer and Jenkins, each must be considered in relation to its own peculiar facts.
In Huber, the Court specifically stated that [in Chapter 77]: "* * * it was the purpose of the Legislature to deal alone with those public lands which are usually bought and sold by acreage in other words, property commonly known as rural lands, lands valuable for their timber or pasturage or for agriculture." (emphasis added). The Court was frank to say, "* * * the language used in the statute defining what constitutes public lands belonging to the state [which the legislature said might be sold] is broad enough to cover urban business property."
Since Jenkins depends upon Huber, the two cases must be considered together in relation to the issue now before the Court.
It would offend reason to suppose that the Legislature [or the Court] considered that no matter how much or what kind of land lying within municipal boundaries fell to the State, it was impossible to sell it and thus restore it to the tax rolls in fulfillment of the manifest legislative purpose directed toward that end and expressed in Chapter 77. Neither Huber nor Jenkins so held.
In 1915, and for a very great many years afterward, the land in the present case had no value for either business or residential purposes. It was of the "type and character" of land, notwithstanding the survey, "usually" and "ordinarily" sold by the acre. It was of that type and character "commonly known" as rural lands. It consisted of 28 1/2 acres and was sold by the acre. The Court in Huber expressly held that is was the legislative purpose to authorize the sale of lands meeting that description.
Notwithstanding Jenkins the power and duty to determine whether land was "more valuable," and if so, how much more valuable, was vested specifically by the Legislature in the Land Commissioner and Governor, not in the Courts. Section 2912 provides: "* * * the land-commissioner may sell them [state lands] at that price, [the minimum fixed by the Legislature] unless the governer and land-commissioner deem any of said lands to be worth more than said sum, in which event it will be their duty to fix the price of such of said lands at what they shall believe *395 the interest of the state to require. * * *" (emphasis added).
Following the 1915 Moore patent, the land was placed on the assessment rolls, taxed and dealt with in all respects as lands privately owned.
On February 17, 1926, Governor Whitfield delivered a special message to the Mississippi Legislature in which he took cognizance of the Court's decision in Huber.
I deem it proper at this time to call to your attention the uncertainty and confusion now prevailing throughout the State relative to the validity of title held by patentees of the State where the land is subdivided into lots and blocks, and by such description title thereto escheated to the State by tax sale or otherwise, and the State Land Commissioner thereafter undertook by patent issued in the name of the State to convey such lands to patentees.
The unrest and confusion came about by reason of a decision of our Supreme Court in Huber v. Freret et al 103 Southern Reporter page 3, wherein the Court held that the Land Commissioner was without authority of law to convey the State's lands described by lots and blocks by patent or otherwise, and that such patents so issued are void. (1926 Mississippi House Journal 845).
The Mississippi Legislature responded to this message and, in an obvious effort to rectify the harm done by Huber and to put at rest for all time the doubts and uncertainties created by it, enacted House Bill Number 16, Chapter 185 of the Laws of 1926. In that Act it was specifically provided, among other things, that the Land Commissioner should have authority to sell "land situated within municipalities which has once been patented by either the United States government or the state of Mississippi, and the title to which has thereafter, by escheat, tax sale, or otherwise become vested in the state of Mississippi, shall be sold by the land commissioner, by and with the written approval of the governor, as herein provided even though it may have been subdivided into lots, blocks, divisions or otherwise and escheated to the state by such description. In selling such land and the improvements thereon, if any, the land commissioner may ask and obtain greater prices therefor than those of swamp and overflowed lands."
It may be well to note here that while Jenkins was decided in November, 1927, and "confounded the confusion" created by Huber, it dealt with a tax patent issued on February 10, 1920, and the case was decided on the basis of Section 2916, Mississippi Code of 1906 relating to tax patents. The Huber and Jenkins decisions following the enactment of Chapter 185 of the Laws of 1926, have no application, of course, to patents subsequently issued.
Thereafter, in 1936, the Legislature enacted House Bill 275 which is Chapter 174 of the Laws of 1936, which became effective March 26, 1936, revising several of the statutory provisions relating to lands belonging to the State of Mississippi. However, it also authorized in express terms the Land Commissioner to sell lands in municipalities to which the State had title at such price and under such terms and conditions as the Land Commissioner with the approval of the Governor, might fix "even though it may have been subdivided into lots, blocks, divisions or otherwise, and even though said lands were sold to the state by such descriptions.
On November 14, 1936, after the effective date of Chapter 174 of the Laws of 1936, the Land Commissioner executed a patent to J.H. Howie. This document included most, but not all, of the lands patented to Moore in 1915 plus a small acreage of adjacent lands. It was countersigned by the Governor and attested to by the Secretary of State under the seal of the State of Mississippi. The consideration paid by Howie to the State for this patent was $60.00 or approximately $2.00 per acre. A title appearing on the patent is "forfeited tax land patent" but its recitals *396 justify a conclusion that it was executed under the provisions of Chapter 153, Mississippi Code of 1930, House Bill Number 275 (Chapter 174 Laws of 1936).
Following the issuance of the patent to him, Howie filed a bill for confirmation of his title. Among others, Mrs. N.B. Easterling was made a defendant. The bill alleged that the Moore patent was void (stating no grounds for that legal conclusion) and that Mrs. Easterling was made a defendant for the purpose of cancelling any claim that she might have as the ultimate vendee of the 1915 patentee, Moore. A demurrer was filed to the bill upon the ground, among others, that it failed to allege that a notice required by Section 6036, Code of 1930, had been given to Mrs. Easterling by the State prior to the time the patent was issued to Howie. The chancellor overruled the demurrer and Mrs. Easterling appealed. In Easterling v. Howie, 179 Miss. 680, 176 So. 585 (1937), this Court reversed and remanded, saying: "The bill of complaint (Howie's) fails to alleged [sic] that before the patent was issued * * * the notice * * * was given to the original buyer, W.W. Moore, or his vendee, [Mrs. Easterling] by registered mail, or otherwise, for a period of 30 days, or that he, or his vendee, was thus given an opportunity to purchase the land under the statutes above referred to. * * *"
The Court pointed out that Howie rested his argument on appeal upon the proposition that the requirement of notice did not apply in cases involving "seat of government lands." In reversing, the Court rejected this argument and said that the enactment of Chapter 185 of the Laws of 1926 had been an effort on the part of the State to do justice to those, who, in good faith, had attempted to purchase State lands. And further, "because of the quantity of seat of government lands divided into blocks and lots and otherwise sold by the state, the rights of many of her citizens are involved as in cases of the issuance of invalid patents to other lands in municipalities. The same purpose is to be served and the same wrong is to be remedied in the one instance as in the other." The Court went on to say that it was not alleged in the bill "* * * that the patent issued to W.W. Moore, as the original buyer of these lands, was not issued at a fair and reasonable price; nor are there sufficient facts alleged to show that the original patent was not obtained in good faith." The Court held that the requirement of notice to an earlier patentee or his vendee was a limitation upon the power of sale of lands theretofore sold or attempted to be sold "* * * until notice is given to the original purchaser, or his vendee." (emphasis added).
When the Howie patent was issued, Chapter 185 of the Laws of 1926 as amended by Section 26, Chapter 174, General Laws of 1936 was in effect and provides, among other things:
All lands fallen or falling to the state by escheat, or coming to it in any other manner; all lands belonging to the state of Mississippi which were ceded to the state of Mississippi by the United States government for a seat of government which are located in Pearl River swamp and subject to overflow and all other seat of government lands which have been surveyed into blocks and lots in the city of Jackson, Mississippi, which were a part of the original lands ceded by the federal government to the state of Mississippi for a seat of government and which have never been disposed of by the state of Mississippi; all accretions near the mouth of the Pascagoula river, heretofore surveyed by the state; and all other lands within the borders of the state, and not belonging to the United States, nor owned by another, are property of the state, and are to be managed and disposed of through the land office; and the land commissioner, with the approval of the governor, may sell any of said lands, (except as otherwise provided in this act), at the same price as the swamp and overflow lands, subject to be *397 fixed in the same manner and under like regulations.
On remand, the bill was not amended and a decree was entered dismissing it. However, before the expiration of the term Mrs. Easterling executed a quitclaim deed to Howie which had the effect of conveying to him all of the right, title or interest she had or might have as vendee of Moore under the 1915 patent. The effect of a quitclaim deed is stated in Section 2125, Mississippi Code of 1930.
A conveyance of quitclaim and release shall be sufficient to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed.
It is the position of the State that the State failed to give the notice to Mrs. Easterling prior to the issuance of the patent to Howie and that this rendered its patent to Howie utterly void. The provision in the statute requiring that the State give notice to a patentee or his vendee, informing him of his preferential right to purchase, before issuing a patent to any other person of lands previously "patented" or "attempted to be patented" conferred upon the patentee or his vendee a personal right to preference in the purchase of the land in the earlier patent. It is clear from the statute that this preferential right was one to be exercised or not at the option of the person in whom it was vested.
Obviously, it was not the purpose or effect of the 1926 and the 1936 acts to void patents previously issued which were, in fact, valid. This legislation was directed toward the accomplishment of an opposite result. In deciding Easterling, the Court emphasized and repeated that invalid patents were those intended to be dealt with. No other construction accords with reason or can be made consistent with the overall intention of the Legislature as reflected by the Acts.
In Easterling, the Court said that the provision for notice to patentees in invalid patents was a limitation upon the State's power of sale so that the land was not "available" for sale. This language, in the light of the provisions of the statute, means that it is not available for sale to one other than the patentee or his vendee under an invalid patent unless, of course, that individual should waive his preferential right to purchase. This was a personal right of the individual to whom it was granted, who was free to reject it expressly, or, under the terms of the Act itself, by failing to exercise it for thirty days following notice.
The record in Easterling shows that the case was settled by compromise. The compromise of litigation is favored. At the time of her quitclaim deed to Howie, Mrs. Easterling was advised as to her alleged preferential right by the allegations of Howie's bill of complaint. This also is indicated by her demurrer and later by her position on appeal. She knew that Howie had received a patent from the State and had paid the State for the land. Was it indispensable that Howie, after obtaining the quitclaim deed from Mrs. Easterling, go again to the Land Commissioner and apply for a duplicate patent simply in order that his patent might bear a date subsequent to the date of the quitclaim deed? We find no substance in the affirmative of this proposition.
Easterling v. Howie, supra, was a private lawsuit, among private individuals, to which the State was not a party. Thirty odd years after the event it is impossible to know what the proof might have disclosed if the case had gone to trial. It was the prerogative of Mrs. Easterling to settle with Howie and she did so by giving him a quitclaim deed and consenting to the entry of a decree confirming his title. This decree then entered against her and the other defendants became final after the expiration of the time allowed for the appeal, no appeal having been taken by any party. *398 Various alleged defects in the proceedings are suggested as having rendered the decree void. No objection, however, has been raised by any party to the suit or whose rights were affected by the decree, although more than 31 years have elapsed within which they might have done so. The State, not having been a party to the litigation, is without standing to question a decree affecting the rights of the individual parties. We do not agree that the record of the bill and demurrer in Easterling (there was never an occasion for Mrs. Easterling to answer) demand that an inference be drawn that no notice was given Mrs. Easterling. Howie's failure to amend his bill following remand may indicate only a feeling on the part of both Howie and Mrs. Easterling that "a bad settlement is often better than a good lawsuit." The presumption is that all the State's officers duly performed their duties with respect to the issuance of the patent to Howie, including the giving of notice. The burden was upon the party alleging a dereliction of duty to overcome the presumption with proof. Mrs. Easterling claimed under an unrecorded deed and it may have been that it was not known at the time of Howie's patent that she was the vendee of Moore. But this is one of the many difficulties which result when it is sought to establish facts and circumstances with any degree of certainty after more than three decades are allowed to elapse before a claim is propounded.
Easterling v. Howie, supra, was before this Court on interlocutory appeal from a decree overruling a demurrer which was granted to settle the controlling principles of the case. Of the appeal this Court said: "The question presented to us as the controlling principle of law in the case is whether or not (the provisions in the 1926 and the 1936 Acts applied) to the giving of notice to a former purchaser under an invalid patent, when the state undertakes to sell `seat of government lands'". The Court referred to Huber and cited the idea conceived in that case that the Legislature had authorized the sale of lands "usually bought and sold by acreage" as having brought about the passage by the Legislature of the 1926 and 1936 Acts. In speaking of the provision requiring notice to a patentee or his vendee in cases of invalid patents the Court stated:
As was said by Judge Anderson in the case of Hart v. Backstrom, 148 Miss. 13, 113 So. 898, 904, when construing section 2 of chapter 185 of the Laws of 1926, now under consideration, that: "It is an effort on the part of the state to do justice to those who, in good faith, had attempted to purchase state lands, and who (both they and the land commissioner) thought they were getting valid titles at the time of purchase, by giving such persons an opportunity, not to take the lands at the price contracted for, but at their appraised value at the time of their application after the passage of the act." (179 Miss. 680, 690, 176 So. 585, 588). Howie bought "at their appraised value * * * after the passage of the act."
The Court decided the "controlling principles of law" in the case saying:
Seat of government lands surveyed into blocks and lots in the city of Jackson, and lands situated in municipalities generally, which have been divided into blocks and lots, are both referred to and authorized to be sold under section 1 of this act; and section 2 thereof, being a limitation upon the power of sale referred to in section 1, excepts from the power of sale vested in the Land Commissioner and the other officials therein mentioned all lands theretofore sold, or attempted to be sold, until notice is given to the original purchaser, or his vendee. This must be done before the lands are available for sale. (179 Miss. 680, 691, 176 So. 585, 588).
Only the rights and interests of Mrs. Easterling were involved. They were not of a character which might not be waived. The power to sell these lands was specifically granted in unmistakable terms in the 1926 and 1936 Acts. A preferential right to purchase was granted patentees or their *399 vendees in cases of invalid patents. We have already expressed our view that the Moore patent was valid. Moreover, if it had not been, at a time when she was represented by counsel and fully advised as to her rights with respect to the property, (as reflected by the record in Easterling v. Howie, supra) Mrs. Easterling knowingly and intelligently waived these rights by executing a quitclaim deed to Howie, the 1936 patentee. The patent conveying these lands to Howie was not void as the State had specific legislative authority to issue it, subject only to the preferential right to purchase granted a patentee or his vendee in a former invalid patent. If it is assumed that the Howie patent was invalid because the State failed to notify Mrs. Easterling of her preferential right as the vendee of Moore, it did no more than render Howie's patent voidable at her election. Her quitclaim to Howie amounted to an express renunciation and waiver of this right. It was not necessary under the circumstances that Howie return to the Land Commissioner for the issuance of a duplicate patent in order that it be dated after the date of the quitclaim deed. Such title as passed to the patentee under both the Moore and Howie patents became merged in Howie.
Following Howie's acquisition of the land in 1936, title passed by mesne conveyances, and became vested in Rankin-Hinds Pearl River Flood and Drainage Control District. On August 12, 1965, that State-created agency conveyed it to appellees, the Stocketts, in a trade for lands owned by the Stocketts, which were, in turn conveyed to the District by the Stocketts. These latter, the lands conveyed to the District by the Stocketts, have long since been put to use by the District which has constructed upon them levees, canals and other devices connected with its legislatively imposed function with respect to flood control. It would be impossible, at this stage, to restore the status quo ante. The chancellor held that the doctrine of equitable estoppel barred the State's suit. This action is assigned as error.
In City of Jackson v. Merchants' Bank & Trust Co., 112 Miss. 537, 547, 73 So. 573, 575 (1917) this Court said:
This court, in the cases of Vicksburg v. Marshall, 59 Miss. 563, and Witherspoon v. Meridian, 69 Miss. 288, 13 South. 843, indicates very clearly that the doctrine of equitable estoppel for the protection of individuals against injury to property, in proper cases, may be successfully invoked against municipalities. In Witherspoon v. Meridian, 69 Miss. 288, 13 South. 843, Chief Justice Campbell said:
"And we are not willing to declare against the doctrine of equitable estoppel as applied to protect individuals against municipal claims under some circumstances. There may be cases where we would not hesitate to use the beneficent doctrine of estoppel in pais against a municipality."
We are easily persuaded that, with the facts of the instant case before him, that eminent jurist would have applied the doctrine of estoppel in pais; and we think the facts and circumstances here are sufficient to justify the application of the doctrine against the appellant municipality.
In Warren County v. Lamkin, 93 Miss. 123, 161, 46 So. 497, 511 (1908) we find the following statement:
It is apparent on casual examination that, if between private persons, recovery in this case would be impossible. But a slice of sovereignty in the shape of a county as plaintiff erects itself here, and, while there can be no criticism of the authorities in trying to recover what may be legally public property, still courts will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens. This is incumbent on us, and exceptions in favor of sovereignty in matters of property on the application of the statute of limitations *400 must have, of course, strict construction as against the sovereignty.
In Reliance Manufacturing Company v. Barr, 245 Miss. 86, 99, 146 So.2d 569, 574 (1962) the general rule is set out:
The authorities hold generally, however, that the defense of equitable estoppel may apply to a state "in a proper case." Courts have not attempted to define what is meant by the phrase "in a proper case", and it has been pointed out that it is better that each case be controlled by its own facts. 31 C.J.S. Estoppel supra.
However, in view of what we have already said with respect to the Moore and Howie patents, we do not reach the question of whether the doctrine should be applied against the State in the present case or not. Nor are we presented with the question of whether or not it would be applied as against Mrs. Easterling and the other individuals who were parties to the 1936 litigation.
Appellees brief the proposition that there is a conclusive presumption of a lost grant under the circumstances of the case supporting their title, but again we do not reach the question.
Finally, appellant argues that the Howie patent was a tax patent, that the Moore patent was void and consequently title to the land was never divested out of the State, and, therefore, the land never became taxable nor subject to sale for taxes, thus rendering the Howie patent void. We have held that the Moore patent was valid. Moreover, assessment and taxation of this land following issuance of the Moore patent indicates (together with numerous deeds and other recorded instruments involving it) that the land has been considered and dealt with as privately owned for more than a half century.
If, however, the patent to Howie was a tax patent, the State is precluded in its present action by Mississippi Code 1942 Annotated section 4106.5 (1956), which is as follows:
Whenever any forfeited tax land patent has been issued by the state for a period of at least ten years, and the patentee has paid into the state treasury the price fixed by the land commissioner and all taxes accruing and payable upon the land described in such patent subsequent to the issuance thereof have been paid, it shall be presumed that in the procurement of such patent the patentee paid a valid, legal and adequate consideration therefor, complied with all the requirements of law, and practiced no fraud upon the state, and that such patent is a valid and legal patent, and said state shall thereafter be forever precluded and estopped from questioning the validity of such patent; provided, however, that said state, through its proper officers, may, within one year from and after the effective date of this act, bring an action in the Chancery Court of the county in which the land described in such patent is situated to determine the validity of any forfeited tax land patent which shall have been issued by the state more than nine years prior to the effective date of this act.
We do not reach the question here of whether Huber or Jenkins should be modified or overruled as neither of those cases involved lands of the type or character here under consideration.
We have no means of knowing how many cases there are in which titles of individual owners of real property in municipalities throughout the State have derived from a State patent issued more than 50 years ago. Such persons may or may not be aware of the Huber and Jenkins cases. Nevertheless, like derelict mines left over from a war that ended more than two and a half decades ago, drifting beneath the surface of the sea and an ever present threat to navigation, those two decisions expressed in somewhat imprecise language, continue to menace the repose and security *401 of the titles of such owners to their property and expose them to attacks of this kind by the State.
However, we adopt the words of Justice George H. Ethridge speaking for this Court in banc on suggestion of error in Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917) on suggestion of error, 115 Miss. 358, 76 So. 519, 520:
The names of great judges of the past, who have adorned this court, have been brought into honored review, in the suggestion of error, as great names in the judicial history of this state. We revere the memory of these judges, and have great respect and deference for their decisions. Able and eminent as these judges were, they were human and fallible, and, while we would not lightly depart from rules laid down by them, still we must, where they have decided cases which operate to effect injustice or lead to wrong results, apply the corrective as though we had rendered the same decisions. We do not intend to depart lightly from precedents. We expect to consider and adhere to them where they are sound in principle; but we refuse to crucify justice on the cross of precedent.
Other matters argued have been considered and are without merit. The case will, therefore, be affirmed.
Affirmed.
All Justices concur except GILLESPIE, P.J., who took no part.
PATTERSON, Justice (specially concurring):
I concur in the result reached by the majority, but do so under the theory of an equitable estoppel. I reached the theory of estoppel based upon the State's action in taxing the subject property since 1917 and the conveyances, or attempted conveyances, by it to Moore by patent in 1915 and by patent to Howie in 1936. This leaves the State, in my opinion, in no position to presently claim the subject of this suit to be public lands when it has consistently considered and treated the same as private property since 1915.
The majority opinion is the product of much deliberation and since I reached the same result by a different route, there is no point in quibbling as to the reasons set forth in the opinion of the majority for their conclusion. Suffice it to say that the cases of Huber v. Freret, 138 Miss. 238, 103 So. 3 (1925), State v. Lockyer, 140 Miss. 808, 106 So. 748 (1926), and Jenkins v. Bernard, 148 Miss. 293, 114 So. 488 (1927), have been properly construed and analyzed. I nevertheless have serious doubt as to the validity of the Moore patent of 1915 for the reason that seat-of-government lands were not subject to being patented in fee in 1915. These lands were the subject of the Leasing Act of 1875 authorizing 99-year leases only. Conceding, however, that Chapter 77, Section 2919, Mississippi Code of 1906, under which the Moore patent was issued, contains the general provision that "all other lands" are the property of the State and subject to being managed and disposed of as swamp and overflow lands, there still remains Section 2929 of the same act which recognizes and makes provision for "lease patents" to the unexpired portion of the lease term where full payment had been made therefor under the act. This delineation signifies, in my opinion, a limitation upon the "all other lands" provision of Section 2919. At the least it leaves the issue of whether the State could convey in fee or only by lease in doubt. This doubt was unquestionably shared by others since the legislature in Chapter 185, Laws of 1926, in revising Section 2919 of the Code of 1906, for the first time by express terms included seat-of-government lands, stating:
All lands fallen or falling to the state by escheat, or coming to it in any other manner; all lands belonging to the state of Mississippi which were ceded to the state of Mississippi by the United States government for a seat of government *402 which are located in Pearl river swamp and subject to overflow and all other seat of government lands which have been surveyed into block and lots in the city of Jackson, Mississippi, which were a part of the original lands ceded by the federal government to the state of Mississippi for a seat of government and which have never been disposed of by the state of Mississippi. * * *
I conclude from these circumstances that the decision of this Court would be upon firmer ground by invoking the doctrine of equitable estoppel rather than a clear-cut decision based upon the dubious validity of the 1915 patent.
I am of the further opinion that the 1936 patent to Howie was void for the reason notice was not given to the original buyer or his vendee in accord with the mandates of Chapter 174, § 19, Section 6036, Laws of 1936. Its language is in part as follows:
* * * And no land heretofore sold, or attempted to be sold, shall again be sold until notice by registered mail is given to the original buyer or his vendee, if his post-office address is known, and within a period of thirty (30) days after the mailing of such notice, such notice shall inform such buyer or his vendee of his rights hereunder. * * *
This Court in Easterling v. Howie, 179 Miss. 680, 176 So. 585 (1937), a case appertaining to the lands here in question, determined on demurrer that notice was a prerequisite or a limitation upon the right of sale conferred by the enactment. It is my conclusion that notice was a condition precedent to the sale by the state and that an after-acquired deed, a condition subsequent, did not retroactively lend lawful authority to the State to make the sale. I do not believe that a presumption of validity of the patent should be indulged by this Court since in Easterling, the record of which is evidence and is in evidence, reflects that the bill of complaint which did not state a cause of action without statutory notice has not been amended to reflect this requisite. This fact is substantiated by the acquisition of a quit claim deed from Mrs. Easterling. This evidence overshadows and excludes the presumption of notice necessary to a valid sale. Additionally, a decree was entered by the trial court in accord with the opinion of this Court in Easterling which voided the patent to Howie, but thereafter, upon agreement of some of the parties and a decree pro confesso as to others, the court entered a second final decree purporting to confirm the 1936 patent though the State was not a party to the cause. It is my opinion this decree was invalid since the bill of complaint did not state a cause of action as determined by this Court. It was not thereafter amended and was therefore insufficient in law to support a valid decree. See Griffith, Mississippi Chancery Practice, section 260 (2d ed. 1950), wherein, among other things, it is stated:
* * * for it is well settled that if complainant states an insufficient case in his bill he cannot have relief although he establishes a good case by his evidence.
as well as the cases therein cited, one of which, Pease & Dwyer Company v. Somers Planting Company, 130 Miss. 147, 156, 93 So. 673, 674 (1922), states:
* * * Where the bill states no cause of action, a final decree on such bill amounts to nothing. It is void. George v. Soloman, 71 Miss. 168, 14 South. 531; Garland v. Hull, 13 Smedes & M. 76, 51 Am.Dec. 140; Belew v. Jones, 56 Miss. 342.
I conclude that the 1936 patent was void and that a forthright opinion based upon an equitable estoppel would be a preferable basis for the result reached rather than a somewhat tenuous holding, with deference, of the validity of a patent by presumption when the record and our own case indicate quite clearly that it is invalid.
The cases cited in the majority opinion relating to equitable estoppel need not be *403 repeated, but they do afford the soundest basis for a just decision in this most complicated suit even though an estoppel has never been applied against the State heretofore. The passage of time, the nature of the land, the attempts to convey, the collection of taxes, and the long failure of the State to file suit to establish these as public lands, permits no other just conclusion.
I therefore concur in the result, but for the reasons stated.