475 So.2d 414 (1985)
John P. WILSON and Velma R. Wilson
v.
GIORDANO INSURANCE AGENCY, INC.
No. 54676.
Supreme Court of Mississippi.
June 5, 1985.
As Modified on Denial of Rehearing September 18, 1985.
Walker W. Jones, III, David W. Mockbee, Michael Wallace, Jones, Mockbee & Bass, Jackson, for appellant.
Michael S. Allred, Michael Farrell, David L. Ayers, Satterfield & Allred, Jackson, for appellees.
EN BANC.
ROY NOBLE LEE, Presiding Justice, for the Court:
On July 21, 1980, Bailey Mortgage Company [Bailey] brought suit in the names of John P. Wilson and Velma R. Wilson, husband and wife, in the Circuit Court of Rankin County, Mississippi, against Giordano Insurance Agency, Inc. [Giordano] seeking the sum of thirty-five thousand dollars ($35,000) damage to the Wilsons' home. The lower court, Honorable Charles Barber, special judge, presiding, heard and sustained affirmative defenses of Giordano in a bifurcated trial and entered judgment for Giordano.
Bailey has appealed to this Court and contends (1) there was a material question of fact as to whether Bailey was a joint tortfeasor; (2) the lower court's determination of a material issue of fact amounted to entry of summary judgment; and (3) Bailey Mortgage Company was not in fact a joint tortfeasor.
Giordano pleaded affirmatively and contended (1) that Bailey was a joint tortfeasor because its negligence contributed to cancellation of a flood insurance policy; (2) a joint tortfeasor cannot settle with the injured party and seek contribution from another joint tortfeasor; and (3) Bailey could not use the Mississippi assignment statute as a vehicle to circumvent Mississippi law which prohibits one joint tortfeasor from seeking contribution from another.
Shortly prior to April 1, 1977, the Wilsons, with the help of Bailey Mortgage Company, applied for a Veterans' Administration loan to obtain financing for the purchase of a home in Flowood, Mississippi. The loan was handled and closed through Mississippi Valley Title Insurance Company.
On April 1, Bailey sent a speedletter to Mississippi Valley Title informing that company the Wilson loan required flood insurance. On the same day, Bailey sent to Mississippi Valley Title a memo stating "Per our conversation, please delete the requirement for flood insurance on the [Wilson] loan." Subsequently, flood insurance *415 was obtained and cancelled, more than once, apparently with somebody having proper authority being unable to make a correct decision thereon. Loan closing documents and insurance forms were executed by Mississippi Valley Title, Bailey Company, and Giordano. Documents from Mississippi Valley Title to Bailey indicated flood insurance was required prior to the loan.
On May 26, 1977, Bailey sent a speedletter to Mississippi Valley Title again stating, "Please send flood insurance policy back. There is no flood insurance required on this loan." On June 13, 1977, Mississippi Valley Title prepared a closing form which deleted the flood insurance policy. The Wilsons' flood insurance policy had been previously issued by Giordano and, on June 21, Bailey sent to Giordano a speedletter stating, "Enclosed is the flood policy and binder for the above referenced number. Flood insurance is not required on this loan, so we are returning the policy for cancellation."
The policy returned by Bailey was dated as having been purchased April 6, 1977. The premium for the policy was eighty-eight dollars ($88.00), which had been paid and receipted on March 31, 1977. The HUD Disclosure/Settlement Statement dated May 26, 1977, shows a payment to Giordano of $88.00 for flood insurance and a deposit with Bailey for one month's flood insurance of $7.33. Both amounts were calculated as part of the total closing costs and the VA Certificate of Loan disbursement dated May 26, 1977, stated a total of $95.33.
The Bailey Company instructed Giordano to cancel the flood insurance which was accomplished without the Wilsons' knowledge, although John Wilson's name was signed to the cancellation dated April 16, 1977. The Wilsons received no refund of the premiums paid pursuant to the cancellation.
During the period April 13 through 16, 1979, (the 1979 Easter Flood) the Wilsons' home was flooded resulting in extensive damage. The flood insurance policy which the Wilsons thought was in effect amounted to thirty-five thousand dollars ($35,000). They immediately made contact for the insurance proceeds and, alas, to the consternation of many people, there was no flood insurance in effect, since Giordano had cancelled same when the loan was closed at the request of the Bailey Company.
Bailey, obviously recognizing its vulnerability, negotiated an agreement with the Wilsons whereby the Bailey Company agreed to pay flood damages not to exceed $35,000, the amount of the cancelled flood insurance policy. Thereupon, the Wilsons agreed to release and discharge Bailey and its representatives of all claims and damages to the Wilsons' home in the April, 1979, flood as a result of the cancellation of, and failure to maintain, flood insurance coverage on the home. The Wilsons further assigned and transferred to Bailey all claims, causes of action, rights and damages which they may have had against Giordano as a result of their terminating the flood insurance policy. Subsequently, the present suit was filed by Bailey in the name of the Wilsons, for damages against Giordano.
The threshold question is whether or not the lower court erred in proceeding to hear the affirmative defenses of Giordano that Bailey was a joint tortfeasor and was estopped from suing Giordano, a tortfeasor, and whether or not the lower court should have impaneled a jury to hear that question.
Bailey filed suit under the Mississippi assignment statute, Mississippi Code Annotated § 11-7-3 (1972), in the name of the Wilsons, who were simply nominal parties and with no interest in the outcome of the litigation. The real party in interest was the Bailey Company. Mississippi Code Annotated § 11-7-7 (1972) provides the following:
Any chose in action ... may be sold or assigned the same as any property ... Such transfer ... shall be valid and binding upon all persons thereafter dealing with such cause of action ... and said suit may be prosecuted to final judgment in the name of the party who instituted *416 the same: Provided, that such sale shall not be used or commented on by the opposite party to the court or jury on the trial of said cause. (Emphasis added)
Thus, it may be readily seen that, in the event Giordano was put to trial on the declaration and answer (with affirmative defenses) it would not be possible for it to show the connection of the Bailey Company with the claim, resulting in a rank injustice to Giordano. However, Mississippi Code Annotated § 11-7-59 (1972) provides in part:
But if matter which heretofore could constitute a plea be set up in the answer in such a manner as to be clearly distinct and readily separable and go to the entire present cause of action, it may, on motion of either or any of the parties, be separately heard and disposed of before the principal trial of the cause, in the discretion of the court; and the said motion shall by itself, without further formalities or any specifications of grounds, operate (1) to set the said manner of plea for argument upon its sufficiency in law, and if held sufficient in law (2) to put in issue upon its facts, and no replication shall be necessary. (Emphasis added)
Following the above statute, the lower court proceeded to hear Giordano's motion to dismiss the suit on its affirmative defenses. Uncontradicted in the record are the following facts evidenced by documents in the Bailey Company's files:
(1) The loan was closed on May 26, 1977, with flood insurance.
(2) The closing documents revealed flood insurance.
(3) The closing attorney collected premiums for flood insurance and forwarded them to Bailey Mortgage Company for escrow.
(4) Bailey asked Mississippi Valley Title Company to return the flood policy with the explanation that none was required.
(5) Bailey's copies of closing documents demonstrate that flood insurance had been whited out.
(6) Memorandum of the Bailey Company to Giordano June 20, 1977, stating "Enclosed is the flood policy and binder for the above referenced number. Flood insurance is not required on this loan, so we are returning the policy for cancellation."[1]
(7) Giordano did not become involved, as to liability, until June 20, 1977, when it received the memorandum, although its cancellation is dated June 13, 1977.
We have carefully reviewed the record, particularly as to the Bailey Company's fault and find it so overwhelming that, if the facts had been submitted to a jury, the lower court would have been bound to enter a directed verdict for Giordano. In Christopher v. Brown, 211 Miss. 322, 51 So.2d 579 (1951), this Court discussed and interpreted § 11-7-59. There, although two separate issues were submitted to one jury, which was not possible in the case sub judice, the Court discussed the above section and its applicability and said:
The above enactment was the legislative response to a wide-spread demand for the expediting of trials in the circuit court. To that end, it requires that all defenses shall be stated in the answer. Pleas in abatement are specifically mentioned. Provision is made for those cases wherein some particular defense is clearly distinct, readily separable and goes to the entire cause of the action, as then stated. In such event, any of the parties may move for a separate hearing thereon. In granting or refusing such motion, the trial judge exercises judicial discretion.
The efficacy of this legislation is apparent. In this cause, the issues were, in fact, twofold only: (1) Whether or not Brown owed the debt; and (2) Whether or not he was about to remove his automobile out of the state... . In such a case, the trial of the attachment issue by *417 one jury, and, following that a trial of the merits by another jury would be expensive and time consuming. Undoubtedly the legislature proposed to prevent such undue expense, loss of time and delay. They expressly vested discretion in the trial judge to determine when, and in what cases, separate hearings may be had. To that extent, in trials in the circuit court, Chapter 230, Laws 1948, Section 1475.5, Code 1942, Annotated, has supplanted Sections 2713 and 2716, Code 1942.
211 Miss. at 328-329, 51 So.2d at 582.
This Court is of the opinion that the lower court did not err, or abuse its discretion, in hearing the motion to dismiss on the affirmative defenses filed by Giordano.
We are not persuaded by the contention of appellant that, assuming arguendo, the Bailey Company and Giordano were tortfeasors, they were not joint tortfeasors.[2] The law is well settled in Mississippi as to what constitutes joint tortfeasors. In D.W. Jones, Inc. v. Collier, 372 So.2d 288 (Miss. 1979), the Court said:
The appellees knew, or by the exercise of reasonable care should have known, of appellant's catfish operations, the toxic effect of the application of agricultural poison on the fish and that all the appellees were, or had been, making the applications of poison. Following the rule announced in [Masonite Corp. v.] Burnham [164 Miss. 840, 146 So. 292] and Westerfield [v. Shell Petroleum Corp., 161 Miss. 833, 138 So. 561], those facts constitute an implied concert of action which resulted in pollution of the ponds, contamination of the catfish and damage to appellant.
Turning to the modern trend where joint and several liability may exist, notwithstanding lack of concerted action on the part of the tort-feasors, and enlarging upon the principle stated in Westerfield v. Shell Petroleum Corporation, supra, we hold that the separate, concurrent and successive negligent acts of the appellees which combined to proximately produce the single, indivisible injury to appellant's property (pollution of its ponds and contamination of its catfish) rendered appellees jointly and severally liable.
372 So.2d at 294. See also State ex rel. Richardson v. Edgeworth, 214 So.2d 579 (Miss. 1968); and Hutto v. Kremer, 222 Miss. 374, 76 So.2d 204 (1954), where the Court said:
[T]he legal principle applicable to the facts of this case is stated at Section 85 of Cooley on Torts (4th Ed.) as follows: "All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission are jointly and severally liable therefor."
222 Miss. at 283, 76 So.2d at 208. See also Granquist v. Crystal Springs Lumber Co., 190 Miss. 572, 1 So.2d 216 (1941).
The lower court made the following finding on the dismissal motion:
It is the opinion of this Court that the assignment from the plaintiffs to Bailey Mortgage Company was valid. However, since this Court has found that Bailey Mortgage Company is a joint tortfeasor, Bailey Mortgage Company is estopped from pursuing this action against Giordano Insurance Agency.
We are of the opinion that there was no reversible error in the trial below and that the judgment of the lower court should be, and is, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON and DAN M. LEE, JJ., dissent.
*418 ROBERTSON, Justice, dissenting:

I.
Without doubt our law recognizes and enforces assignments of rights of action such as that made here by John P. Wilson et ux to Bailey Mortgage Company. I had thought that the enactment in 1916 of what is now Miss. Code Ann. §§ 11-7-3, et seq. (1972) had established beyond per adventure that assignees such as Bailey could bring suit on such acquired rights  and, if desired, in the name of the assignor. Toler v. Owens, 231 Miss. 753, 97 So.2d 728, 729 (1957); Ridgeway v. Jones, 122 Miss. 624, 631, 84 So. 692 (1920).
In the case of such an assignment we have frequently observed that the assignee (Bailey here) steps into and stands in the shoes of the assignor (the Wilsons here). Indiana Lumbermen's Mutual Insurance Company v. Curtis Mathes Manufacturing Company, 456 So.2d 750, 754 (Miss. 1984); International Harvester Company v. Peoples Bank & Trust Company, 402 So.2d 856, 861 (Miss. 1981); St. Paul Insurance Companies v. Gentry, 340 So.2d 442 (Miss. 1976). By this we mean that the assignee (Bailey) acquires such rights as the assignor (Wilsons) has. Indiana Lumbermen's Mutual Insurance Company v. Curtis Mathes Manufacturing Company, 456 So.2d 750, 754 (Miss. 1984); International Harvester Company v. Peoples Bank & Trust Company, 402 So.2d 856, 861 (Miss. 1981).
The assignee ordinarily acquires no greater rights vis-a-vis third parties than were possessed by its assignor, St. Paul Insurance Companies v. Gentry, 340 So.2d 442 (Miss. 1976); Smith v. Copiah County, 232 Miss. 838, 844, 100 So.2d 614, 616 (1958); Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 604, 109 So. 1, 5 (1926) although an exception to this principle is made for the holder in due course. The assignee certainly acquires no less rights than the assignor transfers, and no case may be found suggesting otherwise.
Honing in on the point at issue, it must be conceded that the assignee takes subject to defenses third parties would have had if the claim had been asserted by the assignor. St. Paul Insurance Companies v. Gentry, 340 So.2d 442 (Miss. 1976). By the same token when asserting the claim acquired via assignment, the assignee (Bailey) may not be subjected to defenses asserted by third parties (Giordano) if those defenses would not have been equally as viable had the claim been asserted by the assignor (Wilsons). We find no Mississippi case on the point, although surely it is the logical corollary of all else. In other jurisdictions the rule is enforced that a claim good in the hands of an assignor (Wilsons) as against an obligor (Giordano) is ordinarily equally good and free from defenses in the hands of his assignee (Bailey). Guaranty Deposit Bank, Inc. v. Reedy, 272 S.W.2d 341, 343 (Ky. 1954); Glass v. Carpenter, 330 S.W.2d 530, 537 (Tex.Civ.App. 1959). This, however, is precisely the proposition denial of which is the centerpiece of the majority opinion.
If I understand it correctly, the majority opinion turns on the proposition that Giordano has a defense to any claim for contribution Bailey may assert, a defense emanating from the bar heretofore recognized in our law on contribution claims between or among joint tort feasors. The error in the majority's reasoning is its allowance of this defense against a very different and legally distinct claim  the claim Bailey purchased from the Wilsons. Had the Wilsons sued Giordano on that claim, no one would suggest that Giordano could find comfort in its status as a joint tort feasor with Bailey. Why should not the same result obtain when the Wilsons' claim is asserted by Bailey via the assignment?
When it filed the instant action, there were at least two potential claims Bailey could assert. First, Bailey had a potential claim of and from Giordano for indemnity or, in the alternative, for contribution. Of course, if the entire mess were Bailey's fault, this claim would and should fail. In addition, Giordano has an affirmative defense in the form of the no-right-of-contribution-between-joint-tort-feasors rule.
*419 Second, the Wilsons had a potential claim against Giordano for wrongful cancellation of flood insurance. The Wilsons had assigned that claim, lock, stock and barrel, to Bailey. Bailey now owns that claim. By way of defense and counterclaim, Giordano has every right to assert against Bailey qua Bailey Giordano's claim for indemnity or, in the alternative, for contribution. But as to this second claim, Giordano has no more legal entitlement to assert affirmatively the no-contribution rule than it would if the Wilsons had assigned their claim to Johnny Appleseed and it were asserted by him. That is because the Wilsons' claim  whether asserted by them or by their assignee  is not a claim for contribution. The bar of the no contribution rule has never been applied anywhere except (a) where the party asserting the claim was a joint tort-feasor and (b) where the claim being asserted was a claim for contribution. After citing the rule that there is no right of contribution among joint tort-feasors, the majority takes a quantum leap, without the undergirding of so much as a single case or twist of logic, and holds that Bailey is barred from asserting a claim in no way predicated upon a contribution theory against Giordano. Assuming arguendo that Bailey may not assert a contribution claim against Giordano (a proposition about which I will say more later), what statute, case, or rule of law dictates that Bailey may not assert against Giordano an entirely different claim  the claim Bailey purchased from the Wilsons for $35,000.00.
I cannot get past the proposition that Bailey has purchased the claim of the Wilsons. Bailey stepped into the shoes of the Wilsons. Bailey now asserts the Wilsons' claim. When it does so, that claim is subject to all defenses Giordano would have had if suit had been brought by the Wilsons. On the other hand, insofar as that theory of recovery is concerned, I do not see how Bailey can be made subject to any defenses Giordano would not have had to a suit by the Wilsons. Bailey's position is no stronger or no weaker than that of the Wilsons. For all practical purposes, the suit proceeds as though the Wilsons were the plaintiffs.
If the Wilsons had sued Giordano, the fact that Bailey may have been a joint tort-feasor with Giordano would constitute no defense. What the opinion does, as I perceive it, is to allow Giordano to assert as a defense to the second theory above (wrongful cancellation of flood insurance) an affirmative defense which in my view ought be good only against the first theory (contribution), if at all. It seems to me that this is incorrect.
This is not to say that Giordano should not ultimately prevail at trial on the merits. The facts set out in the opinion disclose little basis for finding fault with Giordano's conduct. Giordano is simply not entitled to prevail at this preliminary stage.

II.
In suggesting that to allow this suit to proceed would subject Giordano to rank injustice, the majority appears to be worrying that Bailey may be circumventing the no contribution among joint tort-feasors rule. I have explained that the point misses the mark because the claim asserted is not a contribution claim. I write further because I perceive that the majority sees far more force in the no contribution rule than it ought to have.
The old common law rule that there is no right of contribution among joint tort-feasors has never made much sense. Thirty-six states have in one way or another abolished it.[1] No one defends it today on *420 grounds of reason or justice, only that it is supported by ancient precedent.
There is in this state no bar to the assertion of such a claim for contribution when it arises ex contractu. Celotex Corp. v. Campbell Roofing & Metal Works, 352 So.2d 1316, 1318 (Miss. 1977); Aven v. Singleton, 132 Miss. 256, 266-267, 96 So. 165, 167-168 (1923); Trinidad Asphalt Manufacturing Co. v. Gregory, 166 F.2d 745, 747 (5th Cir.1948). Section 85-5-5 recognizes a right of contribution amongst two or more joint tort-feasors after the claims against them have been reduced to judgment. Just why we cling to the no-contribution rule in a pre-judgment tort context, I do not understand.
Mississippi has been one of the leaders in recognizing the doctrine of comparative fault. Our rule on comparative negligence is generally regarded as one of the most forward looking in the country. We are justifiably proud of it. See, e.g., Mitchell v. Craft, 211 So.2d 509, 513 (Miss. 1968); Shell, et al., Comparative Negligence In Mississippi, 27 Miss.L.J. 105 (1956); Note, Effect Of Mississippi's Comparative Negligence Statute On Other Rules Of Law, 39 Miss.L.J. 493 (1967).
It seems clear to me that the same logic and sense of justice which led this state to reject the common law contributory negligence rule should also cause us, albeit at this late date, to abandon the common law rule prohibiting a right of contribution among joint tort-feasors. In the words of Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974)
A more equal distribution of justice can best be achieved by ameliorating the common law rule against contribution which permits a plaintiff to force one of two wrongdoers to bear the entire loss, though the other may have been equally or more to blame.
417 U.S. at 111, 94 S.Ct. at 2177, 40 L.Ed.2d at 700.
Consider this illustration. If a plaintiff is 20 percent at fault and a defendant 80 percent at fault, our comparative negligence rule directs that plaintiff recover 20 percent of his damages of and from defendant. On the other hand, if one defendant tort-feasor is 20 percent at fault, he may under our current law be held liable for 100 percent of plaintiff's damages with absolutely no right of contribution against the co-tort-feasor 80 percent at fault. This is unjust and, I submit, indefensible.
For our limited purposes today there is no need to abolish the rule. Indeed, no one has asked that we abolish it. All that need be noted here is the almost universal disrepute into which the rule has fallen and that it certainly today expresses no public policy the slightest circumvention of which we should be alert to thwart.
*421 Looking ahead I would call attention to the broad premises articulated in State v. Stockett, 249 So.2d 388, 401 (Miss. 1971); and Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 463, 467 (Miss. 1983) and suggest the no-contribution-among-joint-tort-feasors rule should be dispatched, if not today, some day soon. So many states have abandoned the rule. I trust it is not asking too much to suggest that Mississippi not be the last to do so.
I respectfully dissent.
DAN M. LEE, J., joins in this opinion.
NOTES
[1] An officer of Bailey, who testified at the trial, stated the author of the memo was no longer employed and that Bailey had no explanation why it returned the policy for cancellation.
[2] For the purpose of the affirmative defenses Giordano admitted its position as a joint tort-feasor.
[1] Thirty-six states, by statute and/or caselaw, appear to allow contribution between joint tort-feasors in a liberal manner  many having adopted some variation of the Uniform Contribution Among Joint Tort-feasors Act  which would permit contribution in the situation posed by the present case: Alaska Stat. Ann. §§ 09.16.010 to 09.16.060 (1980); Ark.Stat.Ann. §§ 34-1001 to 34-1009 (1962); Colo. Rev. Stat. §§ 13-50.5-101 to 13-50.5-106 (Supp. 1980); Del. Code Ann.Tit. 10, §§ 6301-6308 (Supp. 1975); Fla. Stat. § 768.31 (Supp. 1979); Ga.Code § 105-2012 (1978); Haw. Rev. Stat. §§ 663-11 to 663-17 (1976); Idaho Code §§ 6-803 to 6-806 (1979); Ky.Rev.Stat. §§ 412.010 to 412.060 (1972); Md. Ann. Code, Art. 50, §§ 16-24 (1979); Mass. Gen. Laws Ann., ch. 231B, §§ 1-4 (West Supp. 1981); Mich. Stat. Ann. §§ 27A. 2925a to 27A. 2925d (West Supp. 1980-81); Nev.Rev.Stat. §§ 17.225 to 17.305 (1979); N.J. Stat. Ann. §§ 2A:53A-1 to 2A:53A-5 (West 1952); N.M. Stat. Ann. §§ 41-3-1 to 41-3-8 (1978); N.Y.Civ.Prac.Law §§ 1401 to 1404 (McKinney 1976); N.C. Gen. Stat. §§ 1B-1 to 1B-6 (1969); N.D. Cent. Code §§ 32-38-01 to 32-38-04 (1976); Ore.Rev.Stat. §§ 18.440 to 18.460 (1979); R.I. Gen. Laws §§ 10-6-1 to 10-6-11 (1969 and Supp. 1980); S.D.Comp.Laws Ann. §§ 15-8-11 to 15-8-22 (1967); Utah Code Ann. §§ 78-27-39 to 78-27-43 (1977); Va.Code §§ 8.01-34, 8.01-35.1 (1977 and Supp. 1980); Rev. Code Wash. § 4.22.040 (1981); Wyo. Stat. §§ 1-1-110 to 1-1-113 (1977); Skinner v. Reed-Prentice Division Package Machine Co., 70 Ill.2d 1, 12-13, 15 Ill.Dec. 829, 834-35, 374 N.E.2d 437, 442-43 (1977); Best v. Yerkes, 247 Iowa 800, 805-10, 77 N.W.2d 23, 27-29 (1956); Gaulden v. Burlington Northern, Inc., 232 Kan. 205, 213-14, 654 P.2d 383, 391 (1982) (achieved with the aid of third-party practice); Quatray v. Wicker, 178 La. 289, 299-300, 151 So. 208, 211-12 (1933); Bedell v. Reagan, 159 Me. 292, 295, 192 A.2d 24, 26 (1963); Shantz v. Richview, Inc., 311 N.W.2d 155, 156 (Minn. 1980); Stephenson v. McClure, 606 S.W.2d 208, 212-13 (Mo. Ct. App. 1980); Royal Indemnity Co. v. Aetna Casualty & Surety Co., 193 Neb. 752, 755-64, 229 N.W.2d 183, 185-90 (1975); Nationwide Mutual Insurance Co. v. Marcinko, 436 N.E.2d 551, 556 (Ohio Ct.Com.Pl. 1980); Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 358-66, 141 A. 231, 2312-35 (1928); Davis v. Broad Street Garage, 191 Tenn. 320, 232 S.W.2d 355, 357 (1950); Ellis v. Chicago & Northwestern Railway Co., 167 Wis. 392, 403-10, 167 N.W. 1048, 1051-54 (1918).