HUBER *v.* FRERET *et al.**

[103 So. 3. No. 24271.]

(Division B. Jan. 26, 1925. Suggestion of Error Overruled March 9, 1925.)

1. PUBLIC LANDS. *State land commissioner cannot issue patent to urban public lands surveyed into business lots.*

Under section 2919, Code of 1906 (section 5254, Hemingway's Code), construed in connection with the entire Code chapter on public lands, the land commissioner is given no authority to issue a

patent to urban public lands belonging to the state, surveyed into lots for business purposes.

2. STATUTES. *Real purpose and intention in adopting statute considered, though letter violated; unjust or unwise purpose will not be imputed to legislature if reasonable construction will avoid such imputation.*

Where the meaning of a statute is ambiguous, resort may be had to the real purpose and intention of the legislature in adopting the statute, which, when ascertained, the court will give effect thereto even though the letter of the statute be violated. And an unjust and unwise purpose will not be imputed to the legislature when a reasonable construction will save the statute from such imputation.

3. PUBLIC LANDS. *Void patent may be attacked collaterally.*

A patent by the state to public lands cannot be attacked collaterally unless void. Such a patent by the land commissioner, is void where the land commissioner was without authority or power to execute the patent, and may be attacked collaterally.

*Headnote 1. Public Lands, 32 Cyc., p. 1098; 2. Statutes, 36 Cyc., pp. 1111, 1112; 3. Public Lands, 32 Cyc., p. 1097.

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by Mrs. Maggie Freret and others against J. A. Huber. From a decree for plaintiffs, defendant appeals. Reversed and remanded.

*R. B. Ricketts,* for appellant.

On January 17, 1923, there was attempted to be executed by the state land commissioner and sundry other state officers what is called a "public land patent." This instrument purports to convey to the complainants certain land in ten acre lot number 1 in Jackson which land is described as: "Beginning at the Southeast corner of the property owned by Mrs. Kate Johnson, run thence East along Capital street to Town creek, thence along the meandering of Town creek to the Northwest corner of the Johnson lot, thence south to the point of beginning."

This attempted purchase of land from the state deserves close examination because, after the various shifts of base indulged in by the complainants, it has come at last to be the foundation of their claim of title. For all practical purposes they may be taken to have abandoned any claim against Mr. Huber except so far as they may have a claim under the purported patent from the state. The patent appears in full at page 21 of the record. It appears again at page 84.

The pleadings filed here for the appellees disclose the fact that the property which they are attempting to take from Mr. Huber is improved Capital street business property. Such property is exceedingly valuable. The complainants aver that it is so improved and is producing revenue. They claim it under the terms of a supposed patent for which they paid the state of Mississippi the sum of one dollar.

The appellees claim that under the state patent they own a strip of land between the present course of Town Creek and the East line of the Lake-Bauer-Dunbar lot. They say that Huber has built upon this lot of land and is deriving revenue from it.

How did the state get this supposed title which the appellees are now claiming? It is their contention that this land was never sold at any time by the state. That it was part of the land ceded to the state for the seat of government and was never disposed of. This is their position and states their chain of title: "The United States conveyed this land to the state. The state never sold it until we bought it for a dollar."

The appellant contends that the appellees' pleadings in this case show conclusively that the alleged state land patent is void. This condition arises on two accounts: A. It is an instrument which involved a donation of the lands of the state. B. The officers who attempted to execute the state land patent had no authority to convey, in any way or for any price, lands forming a part

of the grant to the state of lands for the seat of the state government.

"Lands belonging to, or under the control of the state, shall never be donated directly or indirectly, to private corporations or individuals, or to railroad companies." Constitution of Mississippi, sec. 95. The payment of the recited consideration of one dollar by the appellees to the state no more saves the transaction from being an actual donation than did the payment of the charge of two dollars and fifty cents provided for by the language of section 2, chapter 121, Laws of 1908. The act of 1908 was condemned by this court as unconstitutional. "But if this were not true, the statute violates section 95 of the Constitution, as it is a donation of lands belonging to or under the control of the state within the meaning of section 95 of the Constitution." *Winton* v. *Day,* 96 Miss. 1, 49 So. 264.

The test of a transaction as to whether or not it involves a donation is a simple one. Did the recited and paid consideration have any actual and direct relation to the true value of the property?

This court cannot know, without proof introduced, what was the exact value of the land claimed by the appellees but it does know that a lot fronting forty feet on the best part of the best business street of a city of thirty thousand population,—and a lot that is improved by the construction of a store building—has a value which could not conceivably be as low as the one dollar paid for it by the appellees. Perhaps it may be contended that the state had no title to this property that could be worth to any one the actual whole value of the property. The practical answer to such a contention is a simple one. That title for which appellees paid a dollar is the only title which they now assert or can assert against the appellant. On the strength of it they base their claim to thousands of dollars worth of property. They now say —as they are forced to say—that the state of Mississippi

138 Miss.—16.

had a good title to the property for which they sue and sold that title to them for a dollar.

The position which they are forced to take involves decisive and conclusive. proof of the truth of our assertion that the transaction under which they claim title involved a donation of land owned by the state. If the state owned the property in controversy and conveyed that property to appellees the payment by them of their one dollar cannot save the patent from invalidity. The officers of the state have authority limited not only by the statutes but by the Constitution itself.

The officers who attempted to convey away the state's land by the patent relied upon by the appellees were wholly without authority to convey, even for an adequate price, the class of land to which this Capitol street property belongs. The supposed patent recites that it is issued under the provisions of section 2919, Code of 1906. An examination of the provisions of that section will make it perfectly clear that lands in the city of Jackson and claimed by the state under the grant from the United States already referred to do not fall within the provisions thereof.

The land attempted to be conveyed was not land that had escheated to the state. It was not land "coming to it in any other manner," for the word coming evidently means "which shall hereafter come." Otherwise the same form of expression would have been used as in the case of escheated lands and the language would have been "having come or coming" to it in any other manner, etc. This land is not an "accretion of land not the subject of private ownership." So that if it is open for sale at all it must be within the limits of the expression "all other lands within the borders of the state and not belonging to the United States nor owned by another." But the whole statute clearly indicates that it is to apply to acreage property and not to city lots. The commissioner is authorized to sell lands coming within

the provisions of the section ''at the same price as the swamp and overflowed lands.''

It was never the intention of the legislature that the provisions of section 2919 should apply to or include town lots in Jackson. It is clear that the section is intended to cover lands which could properly be sold on an acreage basis just as the swamp lands were sold. To give it any other construction would involve what seems to us to be an evident absurdity. Even if appellees had paid full value for the land they are claiming, their patent would be worthless to them except as evidence of a claim against the state for refund of purchase money. It was executed under the provisions of a statute which clearly had no application to the class of lands sought to be conveyed.

*W. E. Morse* and *W. A. Scott, Jr.*, for appellees.

Appellant states that this patent is void, or that this court should construe it to be void. Appellant pins his entire case on this point. The court will bear in mind that complainant's mother claimed to own this land. That on her death these complainants were minors and moved away from here; that if no patent was in question that it was their property, unless it be the claim of defendant by adverse possession who had constructed a part of this building on their property for a little over ten years.

Section 5247 and section 5254 are not in conflict with section 95 of the Constitution. The price is stated at which this property can be sold. Mere inadequacy of price does not make a grant a gift, neither does it make the conveyance void in the absence of fraud. *State* v. *Dantzler Lbr. Co.*, 53 So. 1.

A bill by the state to cancel a conveyance of timber on sixteenth section lands to the lessee of the land for five hundred dollars which gave him twenty years in which to remove the timber, and provided for a surrender of

the remainder of the lease as soon as he had cut the timber or at the expiration of twenty years, alleged that the timber was worth three thousand dollars, that the price was grossly inadequate, that there was no necessity to sell the timber, that it was sold by the board of supervisors because the lessee wished to purchase it, and not to promote the interest of the owners of the property, and that the board knew no one else could bid on it because of the lease to defendant: held, that the bill showed no fraud or collusion between the board and defendant, especially as the surrender of the remainder of the lease after the timber was cut, or at the end of twenty years was a consideration for the conveyance, additional to the money consideration. *State* v. *Blodgett,* 110 Miss. 768, 70 So. 710; *State* v. *Watson,* 70 So. 711; not officially reported; *State* v. *Blodgett,* 70 So. 710, not officially reported; *State* v. *Martin,* 70 So. 710, not officially reported.

The case of *Winston* v. *Day,* 96 Miss. 1, has no bearing on this case. There the legislature attempted to convey certain property to certain individuals and none others. The proposition was not open to all. Appellee admitted that the conveyances were donations, so there was practically nothing else for the court to do. Negatively, appellant attempts to put a high valuation on this property so as to get this court to invalidate his patent. The presumption would be that the patent was valid. Some proof would have to be made that this was a donation. In the absence of any proof the patent should prevail. There was a good and valuable consideration paid. Huber had the same right to get a patent as we had. We simply patented the land that their mother claimed and upon which they lived for a number of years.

The patent simply does this, it keeps the statute of limitations from running against us and entitled us to acquire that which is rightfully ours. Under the old laws we had no land commissioner. The auditor of public accounts was the custodian and he sold the property under restrictions then in force. The legislature has

vested all land matters in the land commissioner and section 5254 gives him authority to sell the state's land. The statute specifies certain kinds of lands and there says: ''All other lands within the borders of the state, and not belonging to the United States, nor owned by another, are the property of the state and are to be managed and disposed of through the land office.'' We say that the land commissioner could not sell unless the same was approved by the secretary of state and the Governor of the state.

The land in question was not within the original grant as a site but was purchased by the state from the United States Government. The state had a right to say what was to be done with the land. The same proposition was open to appellant as was open to us.

*R. B. Ricketts,* in reply for appellant.

We contend that the attempted conveyance by the officers of the state to the appellees was an attempt to make a donation. It is not a case where there can be reasonably raised the question of inadequacy of price. The cases relied upon by appellees counsel are not at all in point. The ground for relief set up by the state in the Dantzler case was the fact that, as it was charged in the bill, the consideration paid for certain timber was inadequate. So far as the report of the case shows the question of donation was not raised.

We contend that the rule laid down in the case of *Winton* v. *Day,* 96 Miss. 1, is controlling in this case. While it is true, as stated by counsel for appellees, that the court in that case held that the legislature could not set up a favored class of land purchasers, it is no less true that the court also said, ''But if this were not true the statute violates section 95 of the Constitution as it is a donation of lands belonging to or under the control of the state, within the meaning of section 95 of the Constitution.'' And the court said further in that opinion,

"Because the act requires the persons to whom the grant is made to pay two dollars and fifty cents for the issuance of the patent to them, this does not in any way hold the act so far as its validity is concerned."

The case of *Winton* v. *Day,* came up on demurrer and this court promptly reversed the decision of the chancellor who had overruled the demurrer and proceeded to sustain the demurrer and dismiss the bill.

ANDERSON, J., delivered the opinion of the court.

Appellees Mrs. Maggie Freret and others filed their bill in the chancery court of the first district of Hinds county against appellant, H. A. Huber, by which they sought to remove clouds from and establish title to a lot in the city of Jackson facing south on Capital street forty feet, and running back a certain distance described in the bill. Appellant demurred to the bill, which demurrer was overruled by the court, and an appeal from that decree was granted to appellant.

The history of the pleadings and proceedings had in the cause up to the time of the making of the decree appealed from is rather long and complicated. We do not deem it necessary, however, to set it out, because the turning point in the case may be properly presented without doing so. Unless the patent from the state to appellees to the lot involved of date January 17, 1923, gave appellees title to said lot, they state no ground for relief in their bill. On the other hand, if the patent is valid and includes the lot claimed by appellant, then appellees will be entitled to the relief prayed for.

Appellant attacks this patent from the state on two grounds. One is that under the law the land commissioner had no authority to execute a patent to urban property divided up into lots for business purposes; that his authority under the statute to sell and convey public lands belonging to the state is confined to rural lands used or capable of being used for purposes of agri-

culture, pasturing or for their timber, such lands as are ordinarily bought and sold by the acre. Another is that the consideration recited in the patent being only one dollar the conveyance was voluntary, and amounted to a donation of public land in violation of section 95 of the Constitution. We agree with appellant as to the first ground, and therefore put our decision upon that ground, and decline to pass upon the constitutional question which is involved in the second ground. As the patent recites on its face, it was executed and delivered to appellees in pursuance of section 2919, Code of 1906 (section 5254, Hemingway's Code). That section defines first what constitutes public lands belonging to the state. It then provides that:

"The land commissioner may sell any of such lands at the same price as the swamp and overflow lands, subject to be fixed in the same manner and under like regulations."

Then follows the provision authorizing the land commissioner in his discretion to rent public lands where improved or tillable. Turning to section 2912, Code of 1906 (Hemingway's Code, section 5247), we find the minimum price at which swamp and overflowed lands belonging to the state are subject to sale, one dollar and twenty-five cents per acre, and the regulations governing the sale of such lands. We know of no other statute under which it can be claimed with any degree of reason that the patent here involved was authorized. We have no statute which applies in terms to urban property divided up into business lots. If there was any authority of law, therefore, for the issuance of this patent, it was section 2919, Code of 1906 (section 5254, Hemingway's Code), which statute is referred to in the patent itself as the authority for its issuance. It must be admitted that the language used in the statute defining what constitutes public lands belonging to the state is broad enough to cover urban business property. But taking its context, and especially construing that section in con-

nection with the other section of the statute mentioned, section 2912, Code of 1906 (section 5247, Hemingway's Code), and also in connection with the entire scheme and purpose of our legislation in reference to public lands, as evidenced by the chapter in the Code on the subject, we are of opinion that it was not the purpose of the legislature to deal with urban business property surveyed and divided into blocks and lots; that it was the purpose of the legislature to deal alone with those public lands which are usually bought and sold by acreage in other words, property commonly known as rural lands, lands valuable for their timber or pasturage or for agriculture. It is true in order to so hold we must go beyond the strict letter of the statute. But that is justified in a proper case, and we think this is a case of that character.

This court has often held that, where the meaning of a statute is ambiguous, resort may be had to the real purpose and intention of the legislature in adopting the statute, which when ascertained the court will give effect thereto even though the letter of the statute is violated. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392; *Learned* v. *Corley,* 43 Miss. 687; *Bonds* v. *Greer,* 56 Miss. 710; *Adams* v. *Y. & M. V. R. Co.,* 75 Miss. 275, 22 So. 824; *Gunter* v. *City of Jackson,* 130 Miss. 637, 94 So. 844. And furthermore, this court has held that, in construing a statute, unjust and unwise purposes will not be imputed to the legislature when a reasonable construction will save the statute from such imputation. *Dunn* v. *Clingham,* 93 Miss. 310, 47 So. 503. It seems plain that the language of this statute as applied to urban property is ambiguous. Applying those principles here we think inevitably leads to the conclusion that the legislature has not so far authorized the land commissioner to sell urban lands divided into lots and having a value for business purposes. The two provisions of the statute relied on provide for a minimum price "per acre," and the fixing of a price above that by the Governor and the

land commissioner when they deem the land to be worth more than the minimum. It is a matter of common knowledge of which the court will take judicial notice that urban business property is not ordinarily sold by the acre at a price of so much per acre, but is sold in lots and blocks and parts of lots and blocks described by metes and bounds in feet and inches; and that such property, located in a thriving municipality on one of its main business thoroughfares, is worth very largely more than rural timber, agricultural or pasture lands. To authorize the valuation and sale of such lands under the same regulations as govern the valuation and sale of rural timbered, agricultural or pasture lands we think would be unwise and unreasonable. We hold, therefore, that there was no authority of law for the execution of the patent involved in this case.

It is true that this is a collateral and not a direct attack on the patent in question, and it is also true that a patent cannot be attacked unless void. *Gastrell* v. *Phillips,* 64 Miss. 473, 1 So. 729. Nevertheless, where the land commissioner had no authority of law to execute the patent, the attack may be made collaterally. 22 R. C. L., p. 342, section 89; *Dixon* v. *Doe ex dem. Porter,* 23 Miss. 84; *Hit-tuk-ho-mi* v. *Watts,* 7 Smedes & M. 363, 45 Am. Dec. 308. The patent here involved comes within the latter principle. It is void. The land commissioner had no authority of law to convey the lot in question. He lacked entirely the power.

*Reversed, and remanded.*