RATCLIFF *v.* STATE.

(In Banc.   March 10, 1947.)

[29 So. (2d) 321.   No. 36342.]

**J. M. Carr** and **D. M. Anderson,** both of Newton, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Appellant was indicted and convicted for the murder of his father-in-law Will Loper, in the Circuit Court of Newton County, and sentenced to be electrocuted.

The evidence shows that some feeling existed between appellant and his father-in-law because of the latter's interference between him and his wife, and that on the day of the slaying appellant was seeking his wife, thought to be at her father's home. He found that she was there, and, after some colloquy with his victim, appellant, who was then unarmed and threatened with a knife by his father-in-law, he said, repaired to his own home and armed himself with a shotgun. He returned to the site of the former encounter, where, he contends, the slaying

took place. His defense is, that his father-in-law, armed with a knife, advanced toward him, apparently with the purpose of attacking him, whereupon he shot in self-defense, with the fatal result.

However, the evidence for the State was to the effect that, finding his father-in-law at the woodpile of his home, appellant first marched him down the road at the point of a shotgun and then marched him back up the road, and back into his own yard and into his own kitchen, where he shot him through the back of the head and killed him. According to the evidence of the appellant, the jury might have been justified in acquitting him on the ground of self-defense. According to the evidence of the State, it was a plain case of premeditated and cold blooded murder. The jury, by its verdict of conviction in this case, adopted as true the testimony on behalf, of the State.

On appeal here, appellant does not challenge the verdict of the jury as being against the weight of the evidence, and does not complain of any instructions, or of the admission or rejection of any evidence, in the trial below. The assignment or errors does complain that the lower court erred in overruling the motion for a new trial; in refusing ''to inquire into the sanity of the appellant by a proper legal trial, on suggestion as made touching the insanity of appellant''; and in sentencing the appellant to be electrocuted on a verdict ''rendered by a jury which was never sworn to try the issues.''

With reference to the last assignment of error, appellant says in his brief: ''We have no independent remembrance of the jury in this cause ever having been sworn to try the issues, and we have searched the record and failed to find therein any affirmative showing that such jury was ever sworn. The only mention in the record of the fact of swearing such jury is the allegation as contained in the judgment and sentence, and that does not cure the defect in the record.'' The judgment of the Court recites: ''Both sides having announced ready for trial and a jury of twelve good and lawful men . . .

who were duly and legally qualified, empanelled, and specially sworn to try the issue joined,'' etc. It is not necessary to cite authorities to sustain the proposition that such a recital in a solemn judgment of a court of record, that the jury was specially sworn, is sufficient evidence of the fact that it was, indeed, specially sworn to try the case. But see Section 1319, 34 C. J., Judgments, p. 907. This assignment is, therefore, overruled. However, nothing there or here said is to be construed as affecting the inconclusiveness of some recitals in certain judgments, constituting exceptions to the general rule, such as statements as to process having been served, in civil cases, where the record discloses that none was had; and others, perhaps. We, therefore, expressly limit our holding here to the recital in the judgment that the jury was specially sworn, and that generally judgment recitals are conclusive.

The attorneys for the appellant in their brief recite, referring to the facts in the record, that ''it indicates to our minds that there was either a cold blooded murderer or a lunatic on the rampage that morning. We are inclined to believe that it was a lunatic rather than a cold blooded murderer.'' After the conviction of appellant his attorneys filed a motion for a new trial, on the ground of newly discovered evidence that ''the appellant is now insane and that he was insane at the time of the said killing,'' and that they did not know of this evidence until after the trial. However, among the recitals of the motion for a new trial is this, ''these attorneys now state and aver that the defendant was in no mental condition to assist them in the defense on his trial and that that was unknown to these attorneys until they had almost completed the defense of the case,'' and further that ''these attorneys for the defendant now state they can prove the mental condition of the defendant'' at the time of the killing and at the time of the trial. The record does not contain any disclosure of effort to bring the matter of the appellant's sanity before the court, when, as shown

above, it came to the attention of his attorneys when the trial was "almost" completed. See Skinner v. State, 198 Miss. 505, 23 So. (2d) 501, where we reaffirmed the rule governing the suspension of a criminal trial to secure an inquiry into the sanity of a defendant. In Carter v. State, 199 Miss. 871, 25 So. (2d) 470, we cited Smith v. State, 95 Miss. 786, 49 So. 945, 27 L. R. A., (N. S.,) 461, Ann. Cas. 1912A, 23, to the effect that the test of criminal insanity is the ability to recognize and appreciate the nature and quality of the act and ability to distinguish right from wrong.

Evidence was offered on behalf of appellant and on behalf of the State, upon the hearing of this motion for a new trial, to enable the trial judge to determine whether or not the defendant could sustain his claim that he had newly discovered testimony, which would prove himself to have been insane at the time of the commission of the crime and at the time of his trial for the offense. Among the witnesses offered by appellant was Janie McDonald, his sister, who testified that she came to the court the day before the trial, in the afternoon, but did not tell his attorneys about her brother's mental condition that day, but next morning about 10 o'clock she did report this information to them. It is significant that the court in is opinion here remarked, "At no time during the trial was any suggestion made to the Court at all about any feigned or real insanity of the defendant." The Court characterized the testimony of appellant's sister as incredible. Furthermore, touching the alleged insanity of appellant, the Court said: "Eleven prominent white men, good citizens of the county, law enforcement officers, who have had opportunity to see and observe and talk to this defendant from his youth up, with one accord say that he is sane; that he knows the difference between right and wrong—some of the witnesses even saying that he is above the average. Three negro witnesses, one of them a preacher, pastor of the church with which this defendant was affiliated, with opportunity to see and

observe him, and even on the Sunday night before this killing occurred on Monday morning, and he says that he never heard of his having spells or fits, never heard of any insanity, and he believes that he is thoroughly sane and responsible." The record sustains these observations of the trial judge.

Furthermore, the trial judge observed this appellant on the witness stand when he was defending himself on a charge of murder, at a time, it is true, when the defense of insanity was not being urged. We held it to be the duty of a trial judge to do so, in Carter v. State, 198 Miss. 523, 21 So. (2d) 404. We there held he must take note of, and act, sua sponte, and appropriately, if he observed any evidence of mental aberrations displayed by the defendant. The answers of appellant to the questions propounded to him were coherent and in no wise betrayed any intimation of an unsound mind. On the contrary, they indicated that he was intelligent and aware of his predicament and his need to exonerate himself, and that he was of sound mind.

It seems to be the idea of appellant that the court should have, on this motion for a new trial, granted a writ of lunacy, which we discussed in Skinner v. State, supra, holding that no writ of lunacy could be permitted to halt a criminal prosecution, where the alleged lunatic was then under indictment in the Circuit Court and being prosecuted, because the Circuit Court had then complete jurisdiction, which the Chancery Court could not invade.

We are unable to find any error committed by the trial court, seeking to learn whether or not appellant could make good his promise of newly discovered evidence if granted a new trial, and its determination that he could not, since the overwhelming weight of the testimony demonstrated his inability to do so. Appellant cites no authority for his position. It will be here recalled that, in the motion, appellant's attorneys said they did not learn of these things until they had "almost completed" the defense part of the trial. In Thornton v. State, 178 Miss.

304, 170 So. 541, citing Bryant v. State, 172 Miss. 210, 216, 157 So. 346, 348, we quoted from the latter case, "A party asking for a new trial on the ground of newly discovered evidence, must satisfy the court that the evidence has come to his knowledge since the trial, and that it was not oweing to want of diligence that it was not discovered sooner, and that it would probably produce a different result if a new trial be granted." [178 Miss. 304, 170 So. 542] Carraway v. State, 167 Miss. 390, 402, 148 So. 340, 344. So here we have a case, we think, in which the trial court was justified in overruling the motion for a new trial not only for the legal reasons supra, but also because the record factually revealed that, to have granted the new trial and the evidence submitted to the jury, it was of such overwhelming weight against the contention of insanity, no different result would likely follow, if a new trial were granted, and the judgment of the trial court is therefore affirmed, and Friday the 25th day of April, 1947, is hereby set for the day of execution.

Affirmed and Friday, April 25, 1947, set for day of execution.