307 So.2d 415 (1974)
The LAND COMMISSIONER and the Attorney General of the State of Mississippi
v.
James B. HUTTON, Jr.
No. 48168.
Supreme Court of Mississippi.
December 9, 1974.
Rehearing Denied February 3, 1975.
A.F. Summer, Atty. Gen., by Mary Libby Payne, Asst. Atty. Gen., Jackson, for appellants.
*416 James B. Hutton, Jr., Alexandria, Va., for appellee.
Rehearing En Banc Denied February 3, 1975.
INZER, Justice:
This is an appeal by the State Land Commissioner and the Attorney General of the State of Mississippi in their official capacity as representatives of the State from a decree of the Chancery Court of the First Judicial District of Hinds County quieting and confirming in appellee title to a tract of land containing approximately 0.4 acre located in Lot 3, Block A, East Jackson. We reverse and render.
James B. Hutton, Jr., individually and in his capacity as trustee for Mrs. Frank McCutcheon, Mrs. Russ Johnson and Mrs. Thomas Smith, filed this suit against the State of Mississippi to quiet and confirm title to a 70 foot lot fronting on the east side of North Street in the City of Jackson. The petition charged that Mrs. Rosaline Gwin Hutton, mother of petitioners and through whom they claim title, purchased a 99 year leasehold interest in the lot on January 9, 1909, and that thereafter on October 15, 1919, acquired there reversionary interest of the State in said lot by virtue of land patent No. 14,182 issued by the Land Commissioner and the Governor. The petition further charged that the decision of this Court in Huber v. Freret, 138 Miss. 238, 103 So. 3 (1925), holding that the Land Commissioner had no authority to issue land patents to land located in cities, cast a cloud on the title of petitioner. Petitioners prayed that the court decree the patent issued to Mrs. Rosa Hutton on October 15, 1919, to be valid and that the title to the lot in question be confirmed in them in fee simple.
The Land Commissioner and the Attorney General answered the petition and admitted the issuance of patent No. 14,182 but denied that it was a valid patent and alleged that it was void due to the fact that the Land Commissioner had no authority to sell seat of government land of which this lot was a part. It was also charged that under the ruling in Huber v. Freret, supra, the Land Commissioner was without authority to convey urban residential property which had been surveyed and divided into lots and blocks. The answer further charged that the consideration of $1.00 recited in the patent was so inadequate that it amounted to a donation of state property in violation of the Constitution.
The record in this case shows that the lot in question was a part of two sections of land ceded to the State of Mississippi in 1819 by the United States for a seat of government. By Chapter LXII, Laws of 1875, the legislature directed the Secretary of State to have surveyed and divided into suitable building lots of not more than one acre all lands belonging to the State and lying within the corporate limits of the City of Jackson which were not excepted from the Act and which had not been appropriated. The Act authorized the leasing of the lots so surveyed for a term of 99 years. In December 1875 the lot in question was leased to R.A. Belch. On January 9, 1909, Mrs. Rosa G. Hutton acquired title to the unexpired leasehold interest in the lot for a stated consideration of $4,000. Thereafter Mrs. Hutton applied for and on October 15, 1919, acquired patent No. 14,182 to the lot in question. The patent was signed by the Land Commissioner and the Governor and recited the consideration "of the premises and $1." The patent also recited that it was issued under the authority of Chapter 77, Section 2919, Code of 1906. The above section was the codification of Chapter 78, Laws of 1892, which established the office of Land Commissioner and provided for the sale of state land.
At the time Mrs. Hutton purchased the leasehold interest in the property for $4,000 there was a two story frame house on the lot. This house was rented and used as a boarding house. The leasehold interest at that time was and had been assessed for years for taxes on the same basis as property owned in fee simple. After *417 the patent was issued to Mrs. Hutton the property continued to be assessed on the same basis as it was prior to the purchase. In 1925 this Court construed Chapter 78, Laws of 1892, as codified in the 1906 Code in Huber v. Freret, supra. In so doing this Court held that the Land Commissioner was not granted the authority to sell urban business property that had been surveyed and divided into lots and blocks. This case was followed by Jenkins v. Bernard, 148 Miss. 293, 114 So. 488 (1927). This case extended the rule announced in Huber to cover urban residential property that had been surveyed into lots and blocks. In fact, the Court stated:
[U]rban property surveyed and mapped into the usual subdivisions is conclusively presumed to have a value above that of rural property.
(148 Miss. at 299, 114 So. at 488)
Prior to the decision in Jenkins, the legislature, recognizing the validity and the effect of the Huber decision, enacted House Bill No. 16, Chapter 185, Laws of 1926, which provided among other things that the Land Commissioner should have authority to sell land situated within municipalities which had once been patented by the United States Government or the State of Mississippi. It further provided that should the title to such land thereafter become vested in the State of Mississippi by escheat, tax sale or otherwise, it should be sold by the Land Commissioner by and with the written approval of the Governor, as provided in the Act, even though it may have been subdivided into lots, blocks, divisions or otherwise.
Section 2 of the Act reads as follows:
Sec. 2. All sales of such lands situated within municipalities, which lands have heretofore escheated to or title thereto become vested in the state, and which have been sold by the land commissioner of the state at a fair and reasonable price not less than that prescribed for the swamp and overflowed lands, may be conveyed to the original holder of the patents, or if he has sold same to his vendee at such reasonable price as the state land commissioner, the governor, and the attorney general shall fix, and such purchaser shall be allowed as credit on such price the amount heretofore paid therefor, with six per cent (6%) interest, compounded annually, on the same, not to exceed the present value as fixed by such officers. And no land heretofore sold, or attempted to be sold shall be sold until notice by registered mail is given to the original buyer, or his vendee, if his post office address is known, and within a period of thirty days after the mailing of such notice. Such notice shall inform such buyer or his vendee of his rights hereunder. Whenever the post office address of such person is not known, notice shall be published in a newspaper published at Jackson, Mississippi, the capital of the state, giving a description of such land for a period of two weeks, and of the right of such buyers, or their vendees. No deed shall be made to such buyer or his vendee until such person shall make affidavit that he bought the same in good faith and has not since sold his interest therein. Provided nothing in this act shall be construed to in any wise affect any litigation now pending with reference to or concerning any land in which the state may have or claim title.
In 1936 the legislature enacted House Bill 275, Chapter 174, Laws of 1936, revising many of the statutory provisions relative to land belonging to the state. However, it specifically authorized the land commissioner to sell lands in municipalities to which the State had title at such price and under such terms and conditions as the Land Commissioner with the approval of the Governor might fix, even though it may have been subdivided in lots, blocks and divisions or otherwise and even though said lands were sold to the State by such description. This act also brought forward Section 2 of the 1926 Act in all material particulars.
*418 It was the purpose of Section 2 of the 1926 Act and the provision in the 1936 Act to allow the people whose patents had been invalidated by our decision in Huber, Jenkins and other cases that followed them to obtain valid patents by so applying, giving credit for the amount paid for the invalid patent. It is not contended that Mrs. Hutton took advantage of the remedial provisions of these acts.
The State contended in the trial court and contends here, among other things, that our decision in Huber and Jenkins controls and that the patent issued to Mrs. Hutton was void. Appellee contended in the trial court and contends here that the Huber decision was obiter dictum and is not a rule of law within the doctrine of stare decisis. It is also contended that Huber and Jenkins should be overruled as wrongfully decided and mischievous. The Chancellor in confirming the title to the lots in appellees did not attempt to modify or overrule Huber, but based his opinion on our decision in State v. Stockett, 249 So.2d 388 (Miss. 1971), wherein we held that in neither Huber nor Jenkins did this Court hold that lands encompassed within the boundaries of a municipality laid off in lots and blocks could not under any conceivable circumstances or for any consideration be sold by the State. It was apparently the opinion of the chancellor that the lot in question was not of the character dealt with in Huber and therefore it was not comparable in value to the land facing Capitol Street as in the Huber case. The chancellor pointed out that the lot in question was on a steep hill which required the back of the house to be built on stilts to maintain the floor level and in addition some property to the rear was occupied by people of the black race. It was on this basis that the chancellor held that the patent issued to Mrs. Hutton was valid.
The facts in the case before us readily distinguish it from Stockett. In Stockett we were dealing with property consisting of about 30 acres of land in the Pearl River bottom subject to overflow. The lands were a part of the lands ceded to Mississippi by the United States as seat of government lands and these lands had been surveyed and mapped into lots and blocks.
The record revealed that in November 1915 W.W. Moore filed an application with the State Land Commission to purchase 28.5 acres of land and offered to pay $2.00 per acre for the land. A patent was issued to him for the price of $2.00 per acre. One of the contentions of the State in the Stockett case was that the patent issued to Moore was void under the rule laid down in Huber v. Freret. In holding that the Moore patent was not void, we pointed out that in 1915 the land involved was swamp and overflow land "congenial only to bullfrogs and mosquitos, subject to annual flooding, unimproved, producing no income, and having no value or suitability for residential or business purposes and if possessing any value whatsoever, it was necessarily for timber, agriculture or pasture."
It was of the character and type, notwithstanding that it had been surveyed into lots and blocks, usually and ordinarily sold by the acre and upon an acreage basis. We also pointed out that the patent to Moore was issued to him on an acreage basis and that he paid for it on an acreage basis for a price in excess of $1.25 per acre fixed by Section 2912, Code of 1906. Consequently, we held that the land in question had no value for either business or residential purposes. In arriving at this decision we specifically stated that we were not modifying or overruling Huber although the holding in Huber was criticized.
There is no doubt that the land involved in the case under consideration was at the time Mrs. Hutton was issued the patent urban residential property that had been surveyed and divided into lots and blocks and was of the character involved in Jenkins and other cases which were decided after Jenkins. It was not subject to overflow and was not swamp land and had a value *419 as urban property and not rural property. Therefore, we are of the opinion that Huber, Jenkins and the other cases hereinafter discussed are controlling unless these cases are to be overruled.
Appellee first contends that the decision in Huber was obiter dictum. The basis of this argument seems to be that the pleadings filed in the trial court in Huber reflect that the title to the property was not deraigned. Thus appellee contends that this Court had no jurisdiction. We need not pause to examine the record in the case because the mere fact that the title was not deraigned would not deprive the court of jurisdiction of the cause. It would only be a ground for demurrer. Smith v. Overstreet, 205 Miss. 488, 38 So.2d 923 (1948). The issue clearly raised by the parties in this Court was the question of the validity of the patent to the lot in question that was issued by the Land Commissioner and approved by the Governor. In fact, this Court stated after reviewing the pleadings that it was not necessary to set them out because the turning point in the case could be presented without doing so. The Court then stated:
Unless the patent from the state to appellees to the lot involved of date January 17, 1923, gave appellees title to said lot, they state no ground for relief in their bill. On the other hand, if the patent is valid and includes the lot claimed by appellant, then appellees will be entitled to the relief prayed for.
(138 Miss. at 246, 103 So. at 4).
The Court then proceeded to determine the issue raised by the pleadings and briefs, and its decision was not obiter dictum but was and is a strict decision.
The appellant in Huber attacked the validity of the patent which was, as is the patent in the case before us, issued under the authority of Section 2919, Code of 1906. The Court construed Section 2919 in connection with Section 2912, Code of 1906, and also in connection with the entire scheme and purpose of the legislature in reference to public land. After applying proper statutory rules of construction, the Court reached the conclusion upon such review that it was not the purpose of the legislature to deal with urban property surveyed and divided into lots and blocks, but it was the purpose to deal alone with public lands which are usually bought and sold by acreage, commonly known as rural lands, valuable for timber, pastures or agriculture. The Court stated in so holding that it was going beyond the strict letter of the statute but stated it was justified in doing so in a proper case and that this case was a proper case for such action. The Court then stated the rules of statutory construction which it applied to reach its conclusion. It stated:
This court has often held that, where the meaning of a statute is ambiguous, resort may be had to the real purpose and intention of the Legislature in adopting the statute, which when ascertained the court will give effect thereto even though the letter of the statute is violated. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L.R.A.(N.S.) 541, Ann.Cas. 1914B, 392; Learned v. Corley, 43 Miss. 687; Bonds v. Greer, 56 Miss. 710; Adams v. Y. & M.V.R. Co., 75 Miss. 275, 22 So. 824. And furthermore, this court has held that, in construing a statute, unjust and unwise purposes will not be imputed to the Legislature when a reasonable construction will save the statute from such imputation. Dunn v. Clingham, 93 Miss. 310, 47 So. 503. It seems plain that the language of this statute as applied to urban property is ambiguous. Applying those principles here we think inevitably leads to the conclusion that the Legislature has not so far authorized the land commissioner to sell urban lands divided into lots and having a value for business purposes.
(138 Miss. at 248, 103 So. at 4).
The Court then held the patent involved was void and, therefore, it was subject to a collateral attack.
*420 No one contends that the rules of statutory construction utilized by the Court in construing the statutes in question were not sound. In fact, we have cited and quoted with approval from Huber on this point in several cases, some of which are: Miss. Power & Light Co. v. Capitol Elec. Power Ass'n, 222 So.2d 399 (Miss. 1969); Carter v. Harrison County Election Comm'n, 183 So.2d 630 (Miss. 1966); Gambrill v. Gulf States Creosoting Co., 216 Miss. 505, 62 So.2d 772 (1953); Easterling v. Howie, 179 Miss. 680, 176 So. 585 (1937); Zeigler v. Zeigler, 174 Miss. 302, 164 So. 768 (1935); and Leaf Hotel Corp. v. City of Hattiesburg, 168 Miss. 304, 150 So. 779 (1933).
The next case to come before the Court was Jenkins v. Bernard, supra. It dealt with urban property that had been sold under the provisions of Section 2916 Code of 1906. This case involved a lot in the City of Gulfport to which Jenkins acquired a patent in 1920. He brought suit to confirm his title, and after an evidentiary hearing the trial court dismissed the suit basing its opinion on Huber v. Freret, supra. On appeal Jenkins contended that Huber applied only to urban business property and the property in question was residential property divided into lots and blocks. This Court in disposing of this contention said:
The property involved in Huber v. Freret, 138 Miss. 238, 103 So. 3, was situated within the corporate limits of Jackson, and fit alone for business purposes. The court held that, under section 2912, Code of 1906 (section 6080 Hemingway's 1927 Code), the land commissioner had no authority to convey the state's title to the lot; that it was not the purpose of the statute to deal with urban business property surveyed and divided into lots and blocks; that it was the purpose of the Legislature to deal alone with those public lands which are usually bought and sold by acreage, land commonly known as rural lands, valuable for their timber or pasturage or for agriculture. The land involved in the case of Knox, Attorney-General, v. Lockyer, 140 Miss. 808, 106 So. 748, was not situated within the corporate limits of any municipality. The land of which the block there involved was a part, it is true, had been surveyed into lots and blocks, but it was rural, not urban, property, and was valuable only for other than urban purposes. It was held, under the statute referred to, that the land commissioner could convey the state's title to the block involved. It will be seen, therefore, that in neither of those cases was the question whether under the statute the land commissioner had the right to convey the state's title to any urban property, which had been divided into lots, blocks and streets, decided. But we decide the question now, and hold that urban property surveyed and mapped into the usual subdivisions is conclusively presumed to have a value above that of rural property. It follows, therefore, that the decree appealed from will be affirmed.
(148 Miss. at 298, 299, 114 So. at 488)
Research reveals that this Court has reaffirmed the holding in Huber and Jenkins in other cases not cited by the parties. State, ex rel. Knox v. Miller, 149 Miss. 29, 115 So. 42 (1927), involved the sale of urban property which had escheated to the state. It had been conveyed by the Land Commissioner and the State contended that the Land Commission had no authority to convey the property. In deciding the case this Court said:
The land consists of city lots, valuable chiefly for urban and not rural purposes. The case is therefore ruled by Huber v. Freret, 138 Miss. 238, 103 So. 3 and Jenkins v. Bernard (No. 26,661) recently decided by Division B. on November 14, 1927 [148 Miss. 293] 114 So. 488, but not yet [officially] reported. The original lot was larger than the usual run of city lots, but any objection on that score, if such there could be, to the case coming *421 within the rule announced in Huber v. Freret, supra, was removed by the division of the original lot into four others before the sale thereof by the land commissioner.
In Money v. Wood, 152 Miss. 17, 118 So. 357 (1928), this Court stated:
In Huber v. Freret, et al., 138 Miss. 238, 103 So. 3, this court had occasion to construe the statute authorizing the land commissioner to convey lands held and owned by the state, the identical statute here relied upon, and held that no authority was given the land commissioner by such statute to issue patents to urban public lands, surveyed into lots, belonging to the state, for business purposes.
(152 Miss. at 29, 118 So. at 359).
In the same case this Court said:
This point we think was settled in the case of Huber v. Freret, et al., supra, where this court said:
It is true that this is a collateral and not a direct attack on the patent in question, and it is also true that a patent cannot be attacked unless void. Gastrell v. Phillips, 64 Miss. 473, 1 So. 729. Nevertheless, where the land commissioner had no authority of law to execute the patent, the attack may be made collaterally, 22 R.C.L., p. 342, § 89; Dixon v. Doe ex dem. Porter, 23 Miss. 84; Hit-tuk-he-mi v. Watts, 7 Smedes & M. 363, 45 Am.Dec. 308. The patent here involved comes within the latter principle. It is void. The land commissioner had no authority of law to convey the lot in question. He lacked entirely the power. (Emphasis added).
(152 Miss. at 31, 118 So. at 360).
The case of Cranford v. State, ex rel. Knox, 159 Miss. 32, 131 So. 638 (1931), also involved urban property in Harrison County which had been patented to Cranford. The State filed suit to cancel the patent, and while the suit was pending the legislature enacted Chapter 185, Laws of 1926. Cranford acting under the provisions of Section 2 of the Act, secured another patent from the state. This Court applied the rule announced in Huber and held that the State had no authority to sell the land in the first instance, and that the Act authorizing for the first time the sale of the land within municipalities which had been subdivided into lots and blocks expressly provided that it would not apply to any litigation then pending. Therefore, the Land Commissioner had no authority to issue the second patent.
It may readily be seen from these cases that this Court had the opportunity to reexamine its holding announced in Huber in several cases and each time reaffirmed the holding. Appellee contends that we should hold that Huber was wrongfully decided and overrule it. To do so we would likewise have to overrule the cases that followed it. We follow the rule of stare decisis and it is particularly applicable to cases involving the construction of statutes. We are of the opinion that the Court in 1925 was in a much better position to ascertain the intent of the legislature in passing the Act than we are at this late date. Furthermore, a decision of this Court is binding in its effect, especially so when it has been followed in other cases. Unless mischievous, resulting in detriment to the public, it will not be overruled although we are of the opinion that it was wrongfully decided. Childress v. State, 188 Miss. 573, 195 So. 583 (1940). We are unable to see how the decisions in Huber and the cases that followed it were mischievous resulting in detriment to the public. It appears that the decisions promoted the interest of the public generally, to the detriment of only those who had purchased valuable urban property for a nominal sum. Even those were given the opportunity of securing a valid patent if they so desired by complying with the remedial act passed by the legislature. We are of the opinion that Huber and Jenkins and the cases that followed them should not be overruled. *422 Consequently, we hold that the Land Commissioner was without authority to issue patent No. 14,182 and it is void.
Neither in the Bill of Complaint nor in his brief does appellee rely upon the theory of a lost grant or upon the doctrine of equitable estoppel. Perhaps the reason being that it is his opinion, as it is ours that neither theory is applicable under the facts of this case.
The chancellor in his opinion did discuss the doctrine of equitable estoppel in relation to what we said in State v. Stockett, supra, but did not apply the doctrine in reaching his decision. The facts in this case readily distinguish it from the Stockett case. There we did not have involved a valid 99 year lease which had not expired, but did have the passage of time, the nature of the land involved, the collection of taxes and long failure of the state to file suit to establish title. In the present case the possession at all times has been consistent with the valid 99 year lease. Under the lease the appellee and his mother were required to and did pay taxes upon the land upon the same basis as owners in fee simple. Prior to acquiring the invalid patent to the land, it was assessed to Mrs. Hutton and she paid taxes on the property. After acquiring the patent no change was made in the assessment and she continued to pay taxes on the basis of the same assessment as she had in prior years. Consequently, there was nothing insofar as the assessment is concerned which was in any way altered to show any change in the character or ownership of the property. Thus, the payment of taxes by Mrs. Hutton and appellee and the collection thereof by the state was entirely consistent with the lease. The possession of the property at all times has been consistent with the lease and in no wise adverse to the state. Since Mrs. Hutton and appellee had a right to hold the property under the lease until it expires, there was no obligation upon the state to take any action to establish its title to the reversionary interest until this suit was filed by the appellee. Under these circumstances we are unable to see how the state could be estopped from asserting its title to the reversionary interest in the land in question.
Furthermore, the facts of this case readily distinguish it from the cases wherein we have held that long, continued, peaceful possession of property accompanied by the usual acts of ownership gives rise to a presumption of a lost grant to supply a broken link in the chain of title. Here the possession of appellee and his mother has in all respects been consistent with their right under the 99 year lease from the state. Appellee relies entirely upon the validity of the patent to the reversionary interest to continue possession of the property after the expiration of the lease. In other words, he bases his claim to the reversionary interest of the state squarely upon the patent issued to his mother. Under these circumstances no presumption of a lost grant can arise.
The holding that we have reached makes it unnecessary to consider or discuss the other points raised by the state.
While the result in this case to some extent may seem harsh, we have no legitimate power in order to prevent harsh results in an occasional case to set aside well settled rules of law based upon statutory construction and sound principles. Austin-Western Road Machinery Co. v. Webster County, 170 Miss. 601, 154 So. 723 (1934); Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661 (Miss. 1973).
For the reasons stated, the decree of the chancery court must be and is reversed and judgment will be entered here in favor of appellant dismissing the bill of complaint with prejudice.
Reversed and rendered.
All Justices concur, except GILLESPIE, C.J., and ROBERTSON and SMITH, JJ., who dissent.
*423 ROBERTSON, Justice (dissenting):
I am unable to agree with the majority that the trial court's decision should be reversed and judgment rendered here for the State. I think that the chancellor reached a fair and equitable decision, and that this Court should apply the doctrine of equitable estoppel and affirm the chancellor's decision in favor of the long-time property owners.
While I do not agree with the Court's reasoning in Huber v. Freret, 138 Miss. 238, 103 So. 3 (1925), and Jenkins v. Bernard, 148 Miss. 293, 114 So. 488 (1927), I think that the right result was reached in both of those cases and they should not be overruled.
Huber and Jenkins are clearly distinguishable from the case at bar. In Huber, the Frerets brought suit in the Chancery Court of the First District of Hinds County against H.A. Huber to confirm their title to a 40-foot lot in the city of Jackson fronting south on Capitol Street and running back about 260 feet. The Frerets claimed title through a State Land Patent dated January 17, 1923. Huber demurred, his demurrer was overruled and an appeal was granted to settle the principles of the case. The equities were all on Huber's side. Huber had claimed this property for a long time, had constructed his building partly on this business lot, and had conducted his business and made a living for his family in this building for well over ten years. The Frerets were attempting to take this property away from Huber, basing their claim solely on this 1923 State Land Patent, which had been issued for a recited consideration of $1.00.
Huber v. Freret was a fight between individuals; the State was in no wise involved, except that a written instrument of the State was being used by the Frerets as an instrument of oppression to reap where they had not sown, to acquire title to a valuable building constructed at great expense and occupied by Huber for more than ten years.
I think this Court was determined to reach a fair and just result (to leave title in Huber, the long-time claimant and occupier of this business lot), even if it was necessary to apply the monkey wrench to Section 2919, Code of 1906, in order to do that. This language from Huber demonstrates the determination of this Court to reach a fair and equitable decision:
"It must be admitted that the language used in the statute defining what constitutes public lands belonging to the state is broad enough to cover urban business property... . It is true in order to so hold we must go beyond the strict letter of the statute. But that is justified in a proper case, and we think this is a case of that character."
138 Miss. at 247-248, 103 So. at 4.
There is another vital distinction between Huber and the case at bar. The validity of the State Land Patent was promptly tested and a decision promptly reached. The Patent was dated January 17, 1923; this Court's opinion was rendered January 26, 1925.
In Jenkins v. Bernard, Jenkins brought suit against Bernard to confirm his alleged tax title to an urban residential lot in Gulfport. The basis of Jenkins' suit was a forfeited tax land patent issued to him by the State Land Commissioner on February 10, 1920, under the authority of Section 2916, Code of 1906. This Court again reached the right result; it determined that it would not oust the long-time owner of an urban residential lot, even though the Johnny-come-lately claimant had a forfeited tax land patent from the State. Again the Court reached an equitable result. Again the Court ruled that a written instrument of the State could not be used as an instrument of oppression, to take property away from a long-time claimant and occupier. Jenkins v. Bernard also was a fight between individual citizens; the State was not attempting to repudiate an official act of its officers and thereby gain an advantage over one of its citizens. Jenkins *424 also was a suit promptly brought to test the validity of a forfeited tax land patent dated February 10, 1920. Again a prompt decision was reached by this Court, and an opinion rendered on November 14, 1927.
In the case at bar, the State, on December 18, 1875, leased vacant and unimproved Lot 3, Block A, Map of East Jackson, to R.A. Belch for 99 years. A two-story frame house was constructed on a part of Lot 3. On January 9, 1909, Mrs. Rosa G. Hutton purchased from Lutie F. Winecoff and her husband, J.C. Winecoff, for $4,000 the unexpired leasehold interest. On October 10, 1919, Mrs. Hutton made proper application to the State to purchase a lot fronting 70 feet on the East side of North Street and extending eastwardly about 250 feet. State State Land Patent Number 14,182 was issued to Mrs. Rosa G. Hutton on October 15, 1919. This Public Land Patent was signed by the Land Commissioner of Mississippi, countersigned by the Governor of Mississippi, and attested by the Secretary of State. It recites in part:
"And said Mrs. Rosa G. Hutton having complied with all of the requirements of the law made in such cases,

"Now therefore, the State of Mississippi in consideration of the premises and of one Dollar, being the amount required to purchase said land, at the price duly fixed, does hereby grant, sell and convey to said Mrs. Rosa G. Hutton ..." (Emphasis added).
This Court first applied the doctrine of equitable estoppel against the State in Caruth v. Gillespie, 109 Miss. 679, 68 So. 927 (1915). It did so in order to reach a fair and just solution to the problem with which it was confronted. This Court affirmed the lower court's decision by presuming a lost grant to the long-time claimant and occupier of the land involved. Caruth brought suit against Gillespie and others to confirm his title to 150 acres of land in Pike County. He claimed under a Forfeited Tax Land Patent issued by the State in 1907. Gillespie and his kin had lived on this land for many years. The chancellor dismissed the original bill and confirmed the title of Gillespie under his cross-bill. In deciding this case, this Court said:
"Aside from many serious questions confronting appellant in this case, we are constrained to hold that a grant from the state to the predecessors in title to appellees must be presumed from the 30 years and more of continued, peaceable possession, accompanied by the usual acts and claim of ownership, and that therefore the broken link in the chain of title, under which appellees claim, is supplied by this presumption of law, and that appellees must be regarded as having a prior and older title to that of appellant.
"The question of the presumption of a lost grant is well treated in volume 2, C.J., p. 288 et seq. On page 290 it is stated:
`A grant from the sovereign may be presumed from the long-continued, peaceable possession of real property, accompanied by the usual acts of ownership, even as against the sovereign itself.'

"And the cases cited in the notes fully sustain the text.
"In the case of Nixon's Heirs v. Carco's Heirs, 28 Miss. 414, the court says:
"`In Grand Gulf Railroad v. Bryan, 8 Smedes & M. 279, this court says: "The authorities abundantly prove that, in favor of long possession, almost every variety of written evidence of title will be presumed. The defective links in the chain of title will be supplied by presumption, and the title declared perfect, when the possession has continued for a great length of time without interruption."'"

109 Miss. at 683-684, 68 So. at 929 (Emphasis added).

*425 ......
"`Laws and judicial tribunals are established for defining and settling rights, so that order and tranquillity may prevail in the community. The policy of the law favors the repose of society, and hence it makes due allowances for the frailties of human memorials, and the difficulties in establishing perpetual evidences of the transactions of men. When so long a time has elapsed that certainty in the proof of events cannot be expected, it receives as a substitute that which is less certain in order to protect apparent right. A contrary policy is not to be tolerated. It would convert the law into an engine to work incalculable mischief. Instead of giving repose to society, it would be the means of promoting contention and strife which would often terminate in injustice.'

"In the recent case of Carter v. Walker, 186 Ala. 140, 65 So. 170, Judge Somerville, for the court, quotes with approval from the case of United States v. Chavez, 175 U.S. 509, 20 S.Ct. 159, 44 L.Ed. 255, as follows:
"`Although neither limitation nor prescription runs against the United States government to the impairment of its title to property, yet "a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession for 20 years, and that such rule will be applied as a presumptio juris et de jure, whenever, by possibility, a right may be acquired in any manner known to the law."'"
109 Miss. at 685, 68 So. at 929 (Emphasis added).

......
"In the case of Scales v. Cochrill, 3 Head. (Tenn.) 432, it is said:
"`The true principle is that without reference to the manner in which the respective possessions are connected or succeed each other if they are continued and connected in fact, without any hiatus, for 20 years, each claiming the ownership in connection with his possession, without regard to the source from which each claims to have derived his title, the presumption will arise that the state has parted with her right by grant, consequently any subsequent grant of the same land would be a nullity, and confer no right upon the grantee... .
The law has very wisely fortified the quiet, unsuspecting cultivator of the soil by this and other barriers, against the shrewd, prying speculator, who cares not who is disquieted, or suffers loss, so that he can make gain. Such adventurers must stand upon their strict legal rights, and expect nothing more.'
"It will be noted that in this case 20 years' possession was sufficient even as against the state." 109 Miss. at 686, 68 So. at 929-930 (Emphasis added).

......
"The fact that appellant claims under a forfeited tax patent from the state adds nothing to the sanctity or confidence of his claim, for, as was well said by Judge Calhoon in the case of Warren County v. Lamkin, 93 Miss. 123, 46 So. 497, 22 L.R.A. (N.S.) 920, on questions arising between the sovereign and the citizen, courts `will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens.'" 109 Miss. at 687, 68 So. at 930 (Emphasis added).

......
"The law favors bona fide possession. Lands are for the use and enjoyment of settlers. It is this possession which Judge McLean, in the Hamner Case in 100 Miss. 349, 56 So. 466, designates as `the life-infusing element.' In aid of this possession, our statute providing that ten years' possession of lands confers title was enacted; and to dispossess appellees from their homestead in this case on a claim under an old tax sale in 1872, when it is shown that appellees and their predecessors in title have enjoyed exclusive possession for at *426 least 30 years without question on the part of the state or any one else, would be to convert a court of justice into one of injustice. We are not certain upon what particular grounds the chancellor below based his opinion, but, for the reasons herein expressed, we think the case should be affirmed." 109 Miss. at 688, 68 So. at 930 (Emphasis added).
If this Court in order to reach a right result in Caruth can presume a lost grant (a grant created out of the whole cloth to supply a missing link in the chain of title), surely this Court in the case at bar can apply equitable estoppel and indulge in a presumption that the Land Commissioner, the Governor, and the Secretary of State did their duty and discharged their responsibilities in issuing a State Land Patent in 1919 to the owner of the 55-year unexpired portion of a 99-year lease. Surely the recitals in State Land Patent 14,182 "And said Mrs. Rosa G. Hutton having complied with all of the requirements of the law made in such cases, ..." import verity, as we have said so many times before. See Ratcliff v. State, 201 Miss. 259, 29 So.2d 321 (1947); Rollings v. Rosenbaum, 166 Miss. 499, 148 So. 384 (1933); Burks v. Moody, 141 Miss. 370, 106 So. 528, suggestion of error overruled 141 Miss. 370, 107 So. 279 (1926); Virden v. Dwyer, 78 Miss. 763, 30 So. 45 (1901).
Equitable estoppel is especially applicable where the State has waited 54 years to assert its affirmative defense of a void State Land Patent issued in 1919 and promptly recorded in the Land Deed Records of Hinds County. The State waited for 54 years until the patentee, who had claimed, occupied and paid City, County and State taxes for 54 years, brought suit to confirm her title; then the State for the first time opened its mouth and contended for the first time that an official State Land Patent issued in 1919 was void ab initio.
If there ever were a case for the application of the doctrine of equitable estoppel against the sovereign in order to achieve a fair and just solution, this is that case. The lower court (a court of equity) reached the right result and we should affirm.
In 1950 the Legislature clearly stated its intent and purpose when it provided:
"Whenever any forfeited tax land patent has been issued by the state for a period of at least ten years, and the patentee has paid into the state treasury the price fixed by the land commissioner, and all taxes accruing and payable upon the land described in such patent subsequent to the issuance thereof have been paid, it shall be presumed that in the procurement of such patent the patentee paid a valid, legal, and adequate consideration therefor, complied with all the requirements of law, and practiced no fraud upon the state, and that such patent is a valid and legal patent; and said state shall thereafter be forever precluded and estopped from questioning the validity of such patent." Now Miss. Code Ann. § 29-1-115 (1972) (formerly § 4106.5) (Emphasis added).
Under the provisions of Chapter 596, General Laws of 1968, the State brought suit against Robert N. Stockett and Carolyn Price Stockett to quiet its alleged title to certain real estate. State v. Stockett, 249 So.2d 388 (Miss. 1971). This suit involved seat of government lands east of Jackson, which had been divided into lots and blocks. A Patent was issued in November, 1915, to W.W. Moore and the Patent recited, as in the case at bar, that it had been issued pursuant to the provisions of Section 2919, Code of 1906. The chancellor dismissed the bill of complaint and on cross-bill, confirmed title in the Stocketts. State v. Stockett stated the questions involved:
"Assigned as error on appeal is the action of the chancellor in upholding two patents issued by the State, (1) to W.W. Moore in 1915 and (2) to J.H. Howie in 1936. Also assigned as error is the action of the chancellor in applying *427 the doctrine of equitable estoppel against the State under the facts in the case, and in holding that Mississippi Code 1942 Annotated section 4106.5 (1956) created presumptive validity of the 1936 patent." 249 So.2d at 389-390 (Emphasis added).
This Court, in affirming the chancellor, said:
"Such an interpolation, which in effect, engrafted a substantial amendment upon the statute wholly beyond its expressed terms, will be neither extended nor expanded further by this Court if that can be reasonably avoided. In neither Huber nor Jenkins was it held that lands belonging to the State which were encompassed within the boundaries of a municipality, laid off in lots or blocks, could not, under any conceivable circumstances or for any consideration, be sold by the State... . It is inconceivable that the language used in Huber and Jenkins could be construed as holding that there was no power for the disposition of property owned by the State simply because it lay within the boundaries of a municipality, no matter what the conditions were, nor what character of land was involved, nor what consideration was paid... . The patent was executed by the Land Commissioner and Governor and it must be presumed, particularly in the absence of anything to the contrary, that these officials duly performed their duty." 249 So.2d at 393. (Emphasis added).
......

"Such a patent carries with it the presumption that all the legal prerequisites necessary to its issuance have been complied with; the presumption that the officers charged with executing land grants have performed their duties in regard to the several acts to be done by them. Harris v. McKissack, 34 Miss. 464; Surget v. Little, 24 Miss. 118; Sweatt v. Corcoran, supra, 37 Miss. 513; Bledsoe v. Little, supra, 4 How. 13; Carter v. Spencer, supra, 4 How. 42.
"A patent to land issued by the sovereign cannot be questioned either in a court of law or equity except on the ground of fraud or mistake. Carter v. Spencer, supra; Sweatt v. Corcoran, supra. (Id., Edward Hines Yellow Pine Trustees v. State, 133 Miss. 334, at 370, 97 So. 552, at 554)." 249 So.2d at 394. (Emphasis added).
......
"The presumption is that all the State's officers duly performed their duties with respect to the issuance of the patent to Howie, including the giving of notice. The burden was upon the party alleging a dereliction of duty to overcome the presumption with proof. Mrs. Easterling claimed under an unrecorded deed and it may have been that it was not known at the time of Howie's patent that she was the vendee of Moore. But this is one of the many difficulties which result when it is sought to establish facts and circumstances with any degree of certainty after more than three decades are allowed to elapse before a claim is propounded." 249 So.2d at 398 (Emphasis added).
In State v. Stockett, this Court quoted with approval from Warren County v. Lamkin, 93 Miss. 123, 161, 46 So. 497, 511 (1908), as follows:
"It is apparent on casual examination that, if between private persons, recovery in this case would be impossible. But a slice of sovereignty in the shape of a county as plaintiff erects itself here, and, while there can be no criticism of the authorities in trying to recover what may be legally public property, still courts will be disposed, if they can, to apply the same rules that the law applies as between the humblest and most unpretentious private citizens. This is incumbent on us, and exceptions in favor of sovereignty in matters of property on *428 the application of the statute of limitations must have, of course, strict construction as against the sovereignty." 249 So.2d at 399-400.
We also said in State v. Stockett:
"We have no means of knowing how many cases there are in which titles of individual owners of real property in municipalities throughout the State have derived from a State patent issued more than 50 years ago. Such persons may or may not be aware of the Huber and Jenkins cases. Nevertheless, like derelict mines left over from a war that ended more than two and a half decades ago, drifting beneath the surface of the sea and an ever present threat to navigation, those two decisions expressed in somewhat imprecise language, continue to menace the repose and security of the titles of such owners to their property and expose them to attacks of this kind by the State." 249 So.2d at 400-401.
Justice Patterson, in a specially concurring opinion, said:
"I concur in the result reached by the majority, but do so under the theory of an equitable estoppel. I reached the theory of estoppel based upon the State's action in taxing the subject property since 1917 and the conveyances, or attempted conveyances, by it to Moore by patent in 1915 and by patent to Howie in 1936. This leaves the State, in my opinion, in no position to presently claim the subject of this suit to be public lands when it has consistently considered and treated the same as private property since 1915." 249 So.2d at 401.
......

"The passage of time, the nature of the land, the attempts to convey, the collection of taxes, and the long failure of the State to file suit to establish these as public lands, permits no other just conclusion." 249 So.2d at 403. (Emphasis added).
In 1970, the Legislature amended Chapter 596, Laws of 1968, by adding thereto these sections:
"Section 2. Any person, firm or corporation claiming title or other interest in said seat of government lands, when such claimant is in possession or has the right of possession, or be threatened to be disturbed in his possession, may proceed as party complainant against the state, as party defendant, by sworn bill in the Chancery Court of Hinds County, to have such title or interest confirmed and quieted, and in such proceedings the summons shall be served on the Attorney General in the mode prescribed by law for the service of a summons in other cases; and he shall appear for the state, and the suit shall be proceeded with as if it were between private persons; and the answer of the state to any such bill need not be under oath or under the great seal, but shall be made by the Attorney General for the state. Deraignment of complainant's title in such cases shall be required.
"Section 3. The Attorney General, in proper cases after investigation, shall file an answer in all such cases setting up any defense on the part of the State of Mississippi, and all of the pleadings in such cases shall be the same as in other cases in chancery, and the said cause shall be heard and determined as other cases in chancery. No decree pro confesso shall be taken against the state, but on failure of the Attorney General to answer within the time required by law, the cause shall be heard on the bill and proof thereon.
"Section 4. If on the final hearing, the court shall be satisfied that the complainant is the real owner of the land, it shall so adjudge and its decree shall be conclusive evidence of the complainant's title as against the State of Mississippi, subject to the right of appeal as hereinafter provided.

*429 "Section 5. Any of the parties may appeal from the decree of the chancery court in the manner and within the time provided by law, and such appeals shall be heard as are other cases of appeals from the decrees of the chancery court."
Law of April 3, 1970, Ch. 554, §§ 2, 3, 4, 5, [1970] Gen.Laws Miss. 848-849 (Emphasis Added).
The Huttons brought suit under this 1970 law on December 15, 1972, to confirm their title to this 70-foot parcel of land. After a full trial, the chancellor, being satisfied that the complainants were the real owners of this land, so adjudged.
This Court can reach a fair, just and right result by simply applying the doctrine of equitable estoppel and affirming the chancellor. If we affirmed, our opinion would be consistent with State v. Stockett, and in accord with the intent and purpose of the Legislature when it said:

"[I]ts decree shall be conclusive evidence of the complainant's title as against the State of Mississippi, ..." § 4, Ch. 554, 1970 Gen.Laws Miss. (Emphasis added).
In acting on the Petitions for Rehearing in Quates v. Griffin, 239 So.2d 803 (Miss. 1970), Justice Rodgers, speaking for the Court, said: "There is need for stability, predictability, and simplicity in the law involving land titles." He then quoted from Caruth v. Gillespie:
"The policy of the law favors the repose of society, and hence it makes due allowances for the frailties of human memorials, and the difficulties in establishing perpetual evidences of the transactions of men." 239 So.2d at 811.
In closing out his opinion, Justice Rodgers said:
"The rule we now adopt should be simple to administer; it is consistent with the policy of both the legislature and the Court that the repose of society is favored. We also are of the opinion that it will promote the plainest principles of justice." 239 So.2d at 812.
In voting to affirm the Chancellor in the case at bar, I think that I am following through on the admonition first made in Caruth and then later made in Quates: "There is need for stability, predictability, and simplicity in the law involving land titles."
GILLESPIE, C.J., and SMITH, J., join in this dissent.